## VAUGHN ET AL. *v.* VERMILION CORP.

No. 77–1819.   Argued October 1, 1979—Decided December 4, 1979

*John K. Hill, Jr.,* argued the cause and filed a brief for petitioners.

*Harry McCall, Jr.,* argued the cause for respondent.   With him on the brief were *Charles R. Sonnier* and *Silas B. Cooper, Jr.**

---

*Solicitor General McCree, Assistant Attorney General Moorman, Louis F. Claiborne, William Alsup, Raymond N. Zagone, Jacques B. Gelin,* and *Martin Green* filed a brief for the United States as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed by *John A. Mmahat* and *Peter E. Duffy* for the Louisiana Department of Wildlife and Fisheries; by *Charles D. Marshall, Jr.,* for the Louisiana Landowners Association,

Per Curiam.

The legal principles stated today in our opinion in *Kaiser Aetna* v. *United States, ante,* p. 164, control the disposition of this case. Because of its posture here, however, we find it necessary to remand the case to the Court of Appeal of Louisiana. We think a brief statement of the facts and proceedings below will be helpful to an understanding of our disposition.

Respondent Vermilion Corp. leases a substantial amount of acreage, owned by Exxon Co., in the State of Louisiana. The land is traversed by a system of manmade canals, which are approximately 60 feet wide and 8 feet deep. The canals are both subject to tidal fluctuations and navigable in fact. They were constructed with private funds, and have been continuously in the control and possession of respondent Vermilion Corp., Exxon, and their predecessors, for a long period of time.

The canal system enters other naturally navigable waterways, and lies between the Gulf Intracoastal Waterway on the north and the Gulf of Mexico on the south. The canals are used for fishing and hunting and are also used by Exxon for oil and gas exploration and development activities. Respondent Vermilion subleases portions of the Exxon land to hunters, trappers, and fishers, and the right to use the canals is a part of the sublease agreement.

In order to control access to the land and the canals, over 400 "No Trespassing" signs are posted in various locations. Respondent Vermilion Corp. employs people to supervise activities in the canals and on the land, and on numerous occasions such people have prohibited strangers from entering and using the property in question.

The present controversy arises out of petitioners' insistence that notwithstanding Vermilion's property rights, they were entitled as a matter of federal law— without obtaining respond-

Inc.; by *Elvis J. Stahr, Jr.,* for the National Audubon Society; and by *Edward B. Poitevent* and *Harry S. Hardin III* for Ramos Investment Co.

ent's permission—to enter the property, travel the canals, and engage in commercial fishing and shrimping activities. Petitioners disregarded several written warnings issued by respondent; respondent then filed suit in the Louisiana state court seeking permanent injunctions against petitioners from trespassing on the land and making use of the canals.*

After commencement of the litigation, respondent moved for summary judgment, based on affidavits and a deposition, pursuant to the appropriate article of the Louisiana Code of Civil Procedure. The trial court granted the motion and petitioners appealed to the Louisiana Court of Appeal. That court affirmed. 356 So. 2d 551. The petition for certiorari here sets forth two questions for review. Pet. for Cert. 5. The first is if a private citizen on his privately held real property and with private funds creates a system of artificial navigable waterways, in part by means of diversion or destruction of a pre-existing natural navigable waterway, does the artificially developed waterway system become part of the "navigable waterways of the United States" and subject to the use of all citizens of the United States? The second is whether channels built on private property and with private funds, in such a manner that they ultimately join with other navigable waterways, are similarly open to use by all citizens of the United States. The difference between the two questions is obvious: The first posits the diversion or destruction of a pre-existing natural navigable waterway in the process of construction of the private waterway, whereas the second does not. We think that our opinion in *Kaiser Aetna* v. *United States, ante,* p. 164, adequately answers the second question presented for review and that the Louisiana Court of Appeal

---

*The Louisiana Court of Appeal, Third Circuit, which was the only Louisiana appellate court to render a written opinion on the question, stated in that opinion that no proof of damages was introduced in the trial court, although they had been prayed for in the complaint, and that no question of damages was raised on the appeal from the trial court to the appellate court.

was correct in determining that on such facts no general right of use in the public arose by reason of the authority over navigation conferred upon Congress by the Commerce Clause of Art. I of the United States Constitution. But the Louisiana Court of Appeal also held that even though the destruction or diversion of naturally navigable waterways occurred in the process of constructing the private waterways, the result would be no different. In so doing, the Court of Appeal relied on *Ilhenny* v. *Broussard,* 172 La. 895, 135 So. 669 (1931), a decision of the Supreme Court of Louisiana. The Court of Appeal, in the light of this decision, held that a factual dispute between the litigants in this case was immaterial, and that summary judgment was proper as a matter of law. That factual dispute is summarized by the Louisiana Court of Appeal in these words:

> "Defendants contend, however, that there is a fact in dispute which is genuinely material to this litigation and that summary judgment was improper. They claim that plaintiff's system of artificial waterways destroyed the navigability of surrounding natural waterways. They argue that this is material because, if true, the court could conclude that the system of artificial waterways was substituted for the pre-existing natural system of navigable waterways. If such a conclusion were reached, the canals would not be private and could not be privately controlled under state and federal law." 356 So. 2d, at 553.

While neither our opinion in *Kaiser Aetna* v. *United States* nor any of the principal cases relied on there deal with this specific fact situation, we do not think it can be said as a matter of law that if petitioners proved their factual allegations that proof would not constitute a defense under federal law to respondent's prayer for injunctive relief in the trial court.

Accordingly, the judgment of the Louisiana Court of Appeal is affirmed with respect to the second question presented in

the petition for certiorari, and vacated and remanded for further proceedings not inconsistent with our opinion in *Kaiser Aetna* v. *United States,* decided today, with respect to the first question.

*It is so ordered.*

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL join, dissenting.

Since the canals involved in this case are entirely artificial in their construction, applicability of the federal navigational servitude is a somewhat closer question than in *Kaiser Aetna* v. *United States, ante,* p. 164. Nevertheless, for the reasons given in my dissenting opinion in that case, *ante,* p. 180, I would reverse the judgment of the Louisiana Court of Appeal.

There is no question that the canals are navigable in fact, or that they give access to the Gulf Intracoastal Waterway, a waterway used for interstate navigation and subject to plenary federal control. The canals are currently used for commercial navigation. They are, thus, "navigable waters of the United States."

If the United States had condemned respondent's fast land in order to construct the canals, I would agree that compensation would be required, although the valuation of the land could not include its potential use as a canal. Cf. *United States* v. *Rands,* 389 U. S. 121 (1967). But the Government did not initiate the construction. Rather, respondent's predecessors in interest voluntarily undertook to transform land into navigable water for purposes of obtaining access to a highway of waterborne commerce. In doing so, they subjected their former fast land to the dominant federal interest in navigation and surrendered the right to control access to the canals.

As in *Kaiser Aetna,* I would hold that the public interest in free navigation predominates, and that, if restrictions on access are warranted, they should be accomplished through the

auspices of the Army Corps of Engineers. While I agree with the Court that it would be inappropriate on this record to decide the first question presented for review, my answer to the second question obviates the necessity of reaching the first. I thus perceive no need to remand the case for further proceedings.