United States Court of Appeals,

Fifth Circuit.

Nos. 94-30444, 94-30538.

Summergill DARDAR, et al., Plaintiffs,

Raymond Serigney, et al., Plaintiffs-Appellants,

v.

LAFOURCHE REALTY CO., INC., et al., Defendants,

Lafourche Realty Co., John Plaisance & Sons, Inc. and Alex J. Plaisance, Jr., Defendants-Appellees.

Summergill DARDAR, et al., Plaintiffs,

State of Louisiana, Intervenor-Appellant,

v.

LAFOURCHE REALTY CO., INC., John Plaisance & Sons, Inc. and Alex Plaisance, Defendants-Appellees.

June 28, 1995.

Appeals from the United States District Court For the Eastern District of Louisiana.

Before POLITZ, Chief Judge, EMILIO M. GARZA and STEWART, Circuit Judges.

POLITZ, Chief Judge:

With today's disposition we bring to closure litigation with the dubious distinction of being one of this circuit's oldest continual actions. Before us is the appeal of Raymond Serigney, Luke Billiot, Joe Billiot, Whitney Billiot, and Deborah Taylor of the district court's judgment declining to find certain waterbodies in south Louisiana subject to the federal navigational servitude. For the reasons assigned, we affirm.

*Background*

1

This senescent litigation involves a large tract of marshlands in southeastern Louisiana owned or under the control of Lafourche Realty. In 1948, after securing the requisite approval from the United States Army Corps of Engineers, Lafourche Realty began the process of dredging the Tidewater Canal across its holdings. Over the next two decades the Tidewater Canal was extended and other canals were developed and added to the system which, eventually, embraced many of the natural waterbodies within Lafourche Realty's holdings via small canals, some dug by trespassers.

Concerned with salt water intrusion, erosion, and damage to the canal network, Lafourche Realty sought and secured Corps approval for a marsh management program encompassing approximately 12,800 acres. Lafourche Realty also secured permits for construction of a series of levees and gates limiting public access to the management area.

Denied free access, the commercial fishermen plaintiffs-appellants filed suit demanding unfettered access to and use of the waterways in the management area. The State of Louisiana intervened, claiming title to the waterbottoms and the right of public access to the waterways. Lafourche Realty counterclaimed, seeking recognition of its title to all property located within its patents. After lengthy litigation,[1] the permits issued to Lafourche Realty were upheld, the State's claims to title

[1] The history of this case is discussed in two of our prior decisions, *Dardar v. Lafourche Realty Co., Inc., et al.,* 985 F.2d 824 (5th Cir.1993) ("*Dardar III*"), and *Dardar v. Lafourche Realty Co., Inc., et al.,* 885 F.2d 868 (5th Cir.1989) (unpublished opinion) ("*Dadar II* ").

2

were rejected, and the Tidewater Canal was declared exempt from public ownership or public use.

On our most recent review we remanded to the district court for the determination whether a federal navigational servitude encumbered certain waterbodies[2] within the management area.[3] We directed the district court to determine whether the waterbodies were navigable in their natural state or as the direct result of dredging. Any waterbody found naturally navigable was to be examined under the rubric in *Kaiser Aetna v. United States*[4] to determine its susceptibility to the federal navigational servitude.[5]

On remand, the district court ruled that none of the waterbodies at issue were subject to the navigational servitude. It found that Bayou John, Branch of Bayou Ferblanc, portions of Mink Bayou, and connecting waterbodies with Mink Bayou and Bay Jacque were not navigable in fact. It also found that Bayou Ferblanc and Bayou Rambo were made navigable by dredging and thus were not amenable to the federal servitude. Finally, noting the evidence indicating that the remaining waterbodies over which it

---

[2]These waterbodies were: Lac de L'Isle, Lac a Roman, Bayou Ferblanc, Branch of Bayou Ferblanc, portions of Mink Bayou, Bayou John, Bayou Rambo, and portions of Bay Jacque, Bay Rambo, Palmetto Bayou, and Redfish Bayou.

[3]*See Dardar III.*

[4]444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1978).

[5]*Boone v. United States,* 944 F.2d 1489 (9th Cir.1991).

had jurisdiction[6] were made navigable by dredging, the court found them not navigable in fact because of their inaccessibility to the public. The court declined to impose the federal navigational servitude and the plaintiffs and the State timely appealed.

*Analysis*

Appellants maintain that the trial court erred in finding that the subject waterbodies were either not navigable or otherwise not subject to the federal navigational servitude.[7] We are not persuaded.

At the threshold we note that, generally, "a navigational servitude is ordinarily imposed on a naturally navigable waterway."[8] The servitude is not visited upon a waterway made navigable by the direct actions of man which does not displace a

---

[6]The district court properly noted that the southern portion of Bay Jacque, the eastern and southern sections of Bay Rambo, portions of Mink Bayou, Palmetto Bayou, and Redfish bayou are not within the subject area of the lawsuit and were beyond its jurisdiction.

[7]Appellants also claim that the district court erred in failing to address their rights to use the "thousands of acres of unnamed" and "emerging" waterways in the subject area. We do not agree. The only evidence relating to the navigability of these unnamed bodies is a statement in the report of one of plaintiff's experts, and is only a non-specific assertion that all of the waters within the area are navigable "if for no other reason than because they are subject to the ebb and flow of the tide." As noted by the district court, this evidence made no specific reference to the waterbodies involved in the litigation. Because of this lack of evidence, the district court did not err in declining to address this issue. *See* Fed.R.Civ.P. 61; *Mundy v. United States,* 22 Cl.Ct. 33 (Cl.Ct.1990); *State ex rel Guste v. Two O'Clock Bayou Land Co., Inc.,* 365 So.2d 1174 (La.App.1978), *writ denied,* 367 So.2d 387 (La.1979).

[8]*Dardar III* at 834.

4

naturally navigable waterway.[9]  Waters so encumbered are subject to public use as "continuous highways for the purpose of navigation in interstate commerce."[10]  Although this servitude "recognizes the important public interest in ... interstate waters that in their natural condition are in fact capable of supporting public navigation,"[11] this interest is not absolute and the imposition of the servitude is not automatic.  A landowner whose properties contain navigable waterways may escape this servitude by showing either that the waterways were not navigable in their natural state or, if naturally navigable, by demonstrating that his interests outweigh those of the public.  In evaluating these competing interests, courts must determine whether:  the waterway was navigable in its natural state and is comparable to other waterbodies upon which the servitude has been imposed;  is on private property and made navigable with private funds;  and was made navigable by actions approved by the Corps of Engineers.

We first inquire whether the waterbodies at issue are navigable.  Waterbodies are navigable when, in their ordinary condition, they can serve as "highways for commerce, over which trade and travel are or may be conducted in customary modes...."[12] Navigability is a question of fact, and findings thereon are

---

[9]*See Vaughan v. Vermillion Corp.,* 444 U.S. 206, 100 S.Ct. 399, 62 L.Ed.2d 365 (1978).

[10]*Kaiser Aetna* at 178.

[11]*Dardar III* at 832, citing *Kaiser Aetna* at 175.

[12]*The Daniel Ball,* 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1870).

subject to review under the clearly erroneous standard.[13]   A waterbody deemed navigable in fact is also deemed navigable in law.[14]

Appellants' challenge to the district court's factual findings on navigability primarily rest on the testimony of one of their experts.  It is abundantly clear that the district court disregarded this testimony and credited the testimony of area residents intimately familiar with the local waterways and the expert offered by Lafourche Realty who had been studying the region for an extended period.  Such credibility assessments by the trial court are accorded great deference.  We find no basis for rejecting that assessment herein.

The trial court's findings that Bayou John, Branch of Bayou Ferblanc, portions of Mink Bayou, and waters adjoining Bay Jacque are not navigable are not clearly erroneous.  Longtime local residents testified that the two discontinuous segments of Bayou John were part marsh and not suitable for travel in their normal state.  This is buttressed by the testimony of plaintiffs' expert that the depth was 18 inches and of defendant's expert that the waterway was isolated in its natural state and connected to outlying bodies of water only by man-made ditches.

Evidence overwhelms that Branch of Bayou Ferblanc was non-navigable.  Plaintiffs' expert conceded the waterbody was impassable at some points.  Defendant's expert testified that this

---

[13]*United States v. Harrell,* 926 F.2d 1036 (11th Cir.1991).

[14]*The Daniel Ball.*

6

waterbody was composed of discontinuous ponds and was accessible only through man-made ditches. Other testimony reflected that the waterbody was only seven inches deep at some points. The record also supports the finding that the connecting waterbodies surrounding Bay Jacque are non-navigable as they are either too shallow for passage along much of their length or terminate in marsh.

The relevant sections in and around Mink Bayou are largely non-navigable. Lay and expert testimony established that the northern and middle areas are clogged and are composed of discontinuous ponds. Lower sections are impassable and fade to naught near the Tidewater Canal.[15] As all of the foregoing waterbodies are not navigable, the district court properly declined to impose the federal navigational servitude.

Nor are we persuaded that the district court erred in declining to impose a navigational servitude on the other named waterways. The record reflects that both Bayou Ferblanc and Bayou Rambo were made navigable through private dredging. The area residents testified that Bayou Ferblanc was passable only after dredging in the 1950s. Other evidence reflects that Bayou Rambo was made passable largely due to its dredging in the 1950s and 1960s. Thus, as these bodies were not naturally navigable, and the

---

[15]Appellants maintain that the district court, in finding Mink Bayou to be non-navigable, disregarded our holding that "Mink Bayou was not navigable until 1948, when the Tidewater Canal intersected it." *Dardar III* at 833 n. 7. The evidence overwhelms that Mink Bayou does not, as a continuous waterway, intersect the Tidewater Canal. Appellants' reliance on the quoted footnote language provides no surcease.

record contains no showing that they displaced naturally navigable waterways, the district court properly concluded that the public had no right to their free use.

Appellants contend that the remaining waterbodies within the subject area are both naturally navigable and accessible through public waterways and, thus, are subject to the federal navigational servitude. The district court's findings to the contrary result from its crediting the defendant's photographic and cartographic exhibits, and the testimony of its expert. Our review of the record does not leave us with the definite and firm conviction that a mistake has been committed. Rejection of the trial court's findings of fact is therefore inappropriate. The evidence credited by the district court established that the portions of the waterbodies in the subject area were accessible only through the privately-owned canal network or through man-made ditches on private property not owned by the plaintiffs. Accordingly, as these waterbodies were inaccessible to the public, the district court was not clearly erroneous in concluding that they were exempt from the servitude because they were unsuitable as a highway for travel or commerce.

Assuming, *arguendo,* that these bodies were navigable, the remaining *Kaiser Aetna* factors would militate against imposition of the servitude. The shallow depth and discontinuous nature of the waterways within the Lafourche Realty management area prevent them from being considered akin to "the sort of great navigable stream that ... has [been] previously recognized as being incapable of

8

private ownership."[16]  The record clearly reflects that all of the remaining waterways at issue are privately owned and that their owners exclude others from entry.  The record also reflects that the waterbodies presently navigable were not navigable in their natural state.[17]  Finally, the improvements making these bodies navigable were accomplished with private funds after receipt of approval from the Army Corps of Engineers.  Therefore, even if the waterways in the instant litigation were found to be navigable, application of the *Kaiser Aetna* test inexorably leads to the conclusion that the federal navigational servitude should not be imposed.

Finding no merit in any assignment of error, the judgment of the district court is in all respects AFFIRMED.

_____

[16]*Kaiser Aetna* at 178-79.

[17]The Army Corps of Engineers concluded that prior to the construction of the Tidewater Canal system, none of the waters in the subject area were naturally navigable.  The evidence also reflects that the actions of man rendered these waterways passable;  Lac de L'Isle, for example, was made navigable due to its being directly deepened by increased water flow from segments of the man-made canal system that penetrated it.