693 So.2d 813 (1997)
Nancy Rogers BABIN, et al.
v.
FIRST ENERGY CORPORATION, Pacific Enterprises Oil Company, Exxon San Joaquin Production Company, IP Petroleum Company, Inc., and Resource Investment Corporation.
No. 96 CA 1232.
Court of Appeal of Louisiana, First Circuit.
March 27, 1997.
Opinion Denying Rehearing May 28, 1997.
*814 Davis C. Treen, Ellis B. Murov, W. Christopher Beary, and J. Wayne Gilette, New Orleans, for Plaintiffs-Appellants Nancy Rogers Babin, et al.
Randall C. Songy, and Ted M. Anthony Lafayette, for Defendants-Appellees First Energy Corporation, et al.
Before WATKINS, GONZALES and KUHN, JJ.
WATKINS, Judge.
Plaintiffs are 131 royalty and overriding royalty owners (Owners) in the Irene Field near Baton Rouge, Louisiana,[1] who appeal a summary judgment dismissing their suit, alleging underpayment of royalties, against First Energy Corporation, Exxon San Joaquin Production Company, and IP Petroleum Company (Lessees). We reverse.

PROCESSING COSTS
The most important issue presented by Owners' claim against their Lessees is: if *815 actual gas processing costs to make the extracted gas marketable ranged from $.08 to $.17 per MMBTU, was it proper for Lessees to charge Owners $.20 or $.25, on the grounds that non-royalty owners were charged as much as $.35 to $.60 for use of the Irene Central Facility (ICF) that Lessees caused to be constructed at a cost of $9.7 Million?
The royalty owner's obligation to share in processing costs has been explained as follows:
Louisiana Mineral Code article 213 defines "royalty" as "any interest in production, or its value, from or attributable to land subject to a mineral lease, that is deliverable or payable to the lessor or others entitled to share therein." Neither the terms of article 213 nor the accompanying comments shed any light on the question of which costs, if any, are deductible by the lessee in determining the royalty due to his lessor....
* * * * * *
The terms of [Article 80] indicate that in the absence of any express provision to the contrary in the lease agreement, the royalty owner is exempt from any liability for drilling and production costs....
* * * * * *
It is generally accepted that the production phase of oil and gas operations terminated upon reduction of the minerals to possession at the well. While the peculiarities of individual lease provisions may provide otherwise, the general rule is that a royalty owner is liable for a proportionate share of the costs incurred subsequent to production. Such "subsequent to production" costs generally include those related to taxes, transportation, and processing.
* * * * * *
Oil and gas usually contain impurities which must be removed to make the product marketable.... [R]emoval of impurities... increase[s] the value of the product above that which it had in its natural state. At issue is whether the costs incurred in processing the product are deductible.
The general rule in Louisiana was summarized in 1960 by the United States Court of Appeals for the Fifth Circuit in Freeland v. Sun Oil Co. [277 F.2d 154 (5th Cir.1960), cert. denied, 364 U.S. 826, 81 S.Ct. 64, 5 L.Ed.2d 55 (1960)][2] ... [Footnote supplied.]
[T]he rule stated therein ... presents a concise summary of Louisiana law on the issue of the deductibility of processing costs....
Although neither the relevant cases in which the issue has been considered nor the general rule established therein present a detailed analysis of the specific costs that may be included, logic dictates that the allowable deduction is of necessity a function of both direct and indirect costs. At issue in determining the reasonableness of the deduction should be the question of whether proper cost accounting techniques have been followed. (Emphasis supplied.)
* * * * * *
The costs of severance taxes, transportation, processing, and treatment are considered to be post-production costs and are, therefore, borne proportionately by the lessee and the royalty owner....
While the deductibility of any cost may be determined with reference to its nature, the question remains as to the reasonableness of the particular item deducted. It is submitted that the deductibility question should focus primarily on the propriety of the deduction in light of acceptable cost accounting standards. Once the theoretical construct has been established that costs in certain categories are deductible, the principle follows that all relevant costs should be included. Among such relevant costs are those of depreciation, overhead, and interest. (Emphasis in original.)
In addition to the character or nature of the costs deducted is the question of the *816 reasonableness of the amount deducted. The relevance of this question can be seen in terms of the lessee's duty to act as a reasonably prudent operator to the benefit of the royalty owner and himself. When considering the reasonableness of the amount deducted, it is submitted that one should first consider the reasonableness of the cost incurred, and then assess the reasonableness of the amount allocated to the lessor in terms of acceptable cost accounting standards. (Emphasis in original.)
F. Parker, Costs Deductible by the Lessee in Accounting for the Production of Oil or Gas, 46 La.L.Rev. 895, 895-911 (1986).
In the instant case, Lessees assert they are entitled to summary judgment because it was reasonable to charge Owners for the market value of the processing services. Lessees argue that the market value of the processing at the ICF was at least $.35 and as much as $.60, and because they charged Owners considerably less (from $.20 to $.25), they made no impermissible deductions from the royalty payments.
The trial court agreed with Lessees, stating:
The third issue is ... a legal question then perhaps a question of fact and it is this: People in the treating plant, why (sic) should they charge to sweeten the gas? Should they charge reasonable costs which is the actual cost, or can they charge fair market value of that service?
It was argued that fair market value of the service isit can amount to gouging the poor people because they are really captive in having to go to that particular treatment plant.
Then it is argued also that if you do the cost factor and if there is inefficiency in the plant, then the cost could be more than what other plants in the near locality was charged. Tit for tat.
I understand that if actual cost is the legal standard that is to be applied then obviously there are questions of fact as to what is the actual cost of the treatment over the various years that we are involved in.
I am taking the position that the expense to be charged is a fair market value of that service.
Now, inasmuch as the court feels that that is the proper standard for the charging of costs (fair market value of the service), then I have to look and see whether or not there are now material issues of facts. If it appears from the affidavits as to what other people are paying, showing that the various plaintiffs were charged less than what other people were charged, then I think that the fair market value would be the arm's length transactions that have occurred with the other people showing that the plaintiffs have gotten this treatment for less and only inures to their benefit. So likewise, the court grants the motion for summary judgment on the third allegation, finding that fair market value of the service is the standard and that there is sufficient evidence to show what the fair market value is.
Neither the trial court nor Lessees cite any convincing authority to support a deduction from royalties for fair market value of the processing, which in acceptable cost accounting terms is a charge for profit. The consensus of authority in Louisiana appears to allow lessees to deduct for reasonable costs, but not additional amounts for profit. Thus, we conclude that Owners have put at issue the disputed material fact of whether the $.20 to $.25 per MMBTU charges made by Lessees were reasonable, precluding summary judgment in Lessees' favor. We hold the trial court erred in granting summary judgment on the claim for processing costs deductions.
The other issues raised by Owners on appeal are: Was it error for the trial court to grant summary judgment in favor of Producers on the basis of a mere affidavit stating that the Owners were credited with adequate severance tax reimbursements?[3] *817 Similarly, was it error for the trial court to grant summary judgment dismissing Owners' claim for payment of take-or-pay settlements when Lessees have failed to produce the requested contracts regarding same?[4] Considering our determination that the summary judgment concerning processing costs was error and must be reversed, we need not address these other elements of Owners' claim. Owners' claim for inadequate royalty payments is one cause of action, and they are entitled to their day in court to prove any of their allegations. A partial summary judgment may be granted in favor of a defendant dismissing a part of a plaintiff's case where: (1) it reduces the issues to be decided at trial; (2) it grants some part of the relief prayed for by the defendant; and (3) where plaintiff has asserted two or more separate causes of action involving different forms of relief. Coleman v. Robicheaux Air Boats, Inc., 94-2139 (La.App. 1st Cir. 6/23/95); 658 So.2d 807. Partial summary judgment is improper in the instant case because plaintiffs' claim fails to satisfy the third element of the test stated in Coleman. What plaintiffs' suit seeks is an accounting for royalties, alleging three different items to be accounted for. Therefore, plaintiffs assert only one cause of action instead of the two or more separate causes of action called for in the Coleman test. Furthermore, a partial summary judgment rejecting a theory of recovery is contrary to LSA-C.C.P. art. 1915 and the granting of such promotes piecemeal litigation. Coleman v. Robicheaux Airboats, Inc., 95-1843 (La.11/13/95); 662 So.2d 452. Therefore, it would be error for us to reverse the judgment of the trial court as it relates to the processing charges and not to reverse the judgment as it relates to the other two items.
Thus, we reverse the entire judgment appealed, and we remand the case for trial on the merits. We cast Lessees with costs of this appeal.
REVERSED AND REMANDED.

ON REHEARING
PER CURIAM.
Although we are still of the opinion that plaintiffs have stated only one cause of action, we have re-examined the record and would reach the same result even if we considered the claim to be three separate and distinct causes of action. We find the trial court erred in concluding there were no material facts being disputed regarding the severance tax issue and the take-or-pay issue. Among the affidavits plaintiffs filed in opposition to the motion for summary judgment was one by Harvey L. Nelson, CPA. We stated:
Irene Field operators have not produced sufficient documents showing that the royalty and overriding royalty owners were credited for severance tax reimbursements, take or pay settlements and/or buydowns. More specifically, Affiant has only seen documents showing that, in one month, severance tax reimbursements were credited to at least one royalty and overriding royalty owner and has not been allowed to review gas purchase contracts which would enable Affiant to opine on the crediting or noncrediting of severance tax reimbursements and/or take or pay settlements and/or buydowns.
Because the record reveals the existence of disputed material fact, the defendant-movers failed to carry their burden of proof that they are entitled to summary judgment as a matter of law.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). The initial determination, on a *818 motion for summary judgment, is whether the supporting documents presented by the moving party are sufficient to resolve all material issues of fact, if they are not sufficient, summary judgment should be denied. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94); 639 So.2d 730, 752. To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152, 1154 (La.1983). In making this determination, the mover's supporting documents must be closely scrutinized and the non-mover's indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La. 1981), cert. denied, 444 U.S. 206, 100 S.Ct. 399, 62 L.Ed.2d 365 (1979). Since the moving party bears the burden of proving the lack of a material issue of fact, where the court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991); Thompson v. South Central Bell Telephone Co., 411 So.2d 26, 28 (La.1982). It is only if the court determines that the moving party has met this onerous burden that the burden of proof shifts to the opposing party to present evidence that a material fact is still at issue. Robertson, 574 So.2d at 384.
Accordingly, we deny the defendants' request for rehearing.
NOTES
[1] Owners include several large corporations as well as individual citizens.
[2] The Fifth Circuit Court noted that all increases in the ultimate sales value attributable to the expenses incurred in transporting and processing the mineral product must be deducted. The royalty owner shares only what is left. Thus, he bears his proportionate share of postproduction costs.
[3] Owners alleged they were entitled to an accounting for severance tax reimbursements received by Lessees. The information provided Owners by Lessees during discovery was inadequate, according to the affidavit of Owners' expert, to make a determination of whether the Owners had been properly credited for the reimbursements. The trial court granted summary judgment on the grounds that Owners had ample time to make further discovery but failed to do so.
[4] Owners alleged they were entitled to an accounting for take-or-pay settlements entered into by Lessees. The Lessees responded by filing an affidavit denying any take-or-pay settlements. The trial court granted summary judgment on this issue, apparently for Owners' failure to refute the Lessees' denial.