WINDHORST, J.
The Louisiana Department of Natural Resources ("DNR") and Bayou Bridge Pipeline, LLC ("Bayou Bridge") (collectively "appellants") seek review of the district court's judgment in favor of plaintiffs and remanding this matter to DNR for further proceedings as set forth in its reasons for judgment. For the following reasons, we reverse the district court's judgment and uphold the validity of the Coastal Use Permit ("permit" or "CUP") issued to Bayou Bridge for the construction and operation of a crude oil pipeline, two pump stations, and other ancillary facilities (the "proposed pipeline").
FACTS AND PROCEDURAL HISTORY
On February 22, 2016, Bayou Bridge submitted an application to DNR for a *948 permit for the construction and operation of the proposed pipeline. The proposed pipeline is designed to safely carry 280,000 barrels or more of light or heavy crude oil per day from the existing Clifton Ridge Terminal facility in Lake Charles, Louisiana, to various existing crude oil terminals located in St. James, Louisiana. The Clifton Ridge Terminal and most of the proposed pipeline are outside the Coastal Zone. The proposed pipeline ends at existing crude oil terminals located in St. James, within the Coastal Zone. After arriving in St. James, the crude oil will be transported via other pipelines to refineries located along the Gulf Coast. One purpose of the proposed pipeline is to connect two existing oil terminals.
During its evaluation regarding whether to issue the permit, DNR made nine separate requests for additional information from Bayou Bridge before holding a public hearing in St. James Parish, Louisiana. After the public hearing, DNR received numerous comments regarding the proposed pipeline. As a result, DNR made three additional requests for information from Bayou Bridge. In addition, prior to DNR's final action on the application, the proposed pipeline obtained a permit from the Bayou Lafourche Fresh Water District to cross Bayou Lafourche. Moreover, in letters dated August 2, 2016, and February 6, 2017, St. James Parish stated that it "has no objection and supports the project." After completing a thorough analysis of the proposed pipeline and finding that Bayou Bridge has modified, avoided or reduced all adverse environmental impacts to the maximum extent practical, DNR issued the permit for the proposed pipeline on April 3, 2017.
Plaintiffs/Appellees, Harry Joseph, Sr., Genevieve Butler, Humanitarian Enterprise of Loving People, Gulf Coast Restoration Network, The Atchafalaya Basinkeeper, and BOLD Louisiana, timely filed petitions for reconsideration with DNR. The Secretary of DNR denied their petitions, but addressed the concerns raised in each petition in a written response.
On June 2, 2017, Appellees filed the instant action, a petition for judicial review, in the Twenty-Third Judicial District Court for the Parish of St. James, Louisiana, alleging that DNR had violated the Louisiana Constitution and its own Guidelines by issuing the proposed permit to Bayou Bridge. Appellees asserted that (1) DNR did not consider the potential adverse environmental impacts of the proposed pipeline on St. James Parish; (2) DNR ignored its constitutional and regulatory duties to consider the cumulative impact of the proposed pipeline on St. James Parish; (3) DNR ignored evidence that the people of St. James Parish may be trapped in the event of an emergency with no viable evacuation plan; and (4) DNR misapplied its own Guidelines.
After a hearing, the district court rendered judgment in favor of plaintiffs/appellees, and remanded the matter to DNR for reasons set forth in its reasons for judgment dated April 26, 2018. In sum, the district court found that DNR did not apply Coastal Use Guidelines 711(A) and 719(K), that these guidelines apply, and ordered Bayou Bridge "to develop effective environmental protection and emergency or contingency plans relative to evacuation in the event of a spill or other disaster, in accordance with guideline 719(K), PRIOR to the continued issuance of said permit." DNR and Bayou Bridge appealed this judgment.
ASSIGNMENTS OF ERROR
DNR presents the following assignments of error: (1) the district court erred in not deferring to DNR's findings that CUP guidelines 711(A) and 719(K) do not *949 apply to the proposed pipeline; (2) the district court erred in finding that DNR did not comply with guideline 711(A) because it ensured that the pipeline route is, to the maximum extent practicable, either on lands 5 feet or more above sea level or otherwise within an existing utility; (3) the district court erred in finding that DNR did not comply with guideline 719(K) as it received emergency response plans for operation of the pipeline; and (4) the district court erred in finding DNR is mandated to require from Bayou Bridge an evacuation plan for the community living on Burton Lane in St. James Parish. Bayou Bridge asserts substantially similar assignments of error, including: (1) the district court erroneously held that it was arbitrary and capricious for DNR to fail to apply guideline 719(K); (2) even if guideline 719(K) applied, this guideline has been satisfied and/or is preempted, and the district court incorrectly held that it requires an evacuation plan prior to issuance of the permit; (3) the district court erroneously held that it was arbitrary and capricious for DNR to fail to apply guideline 711(A); and (4) even if guideline 711(A) applied, this guideline has been satisfied and/or is preempted.[1] Appellees request that this Court address the issue of whether DNR violated its public trust duty and reverse and vacate DNR's issuance of the permit for the proposed pipeline.
LAW AND ANALYSIS
Judicial review of this case falls under the Louisiana Administrative Procedure Act. La. R.S. 49:950, et seq. ; La. R.S. 49:214.35F; La. R.S. 49:964. La. R.S. 49:214.35D states that "Any person authorized by this Subpart to appeal a coastal use permit decision or any local government aggrieved by a final decision on approval of a local program may seek judicial review of that decision whether or not a petition for reconsideration has been filed under this Section." La. R.S. 49:214.35E provides that "Proceedings for review may be instituted by filing a petition in the district court of the parish in which the proposed use is to be situated...."
La. Const. art. V, Sec. 16 states that "A district court shall have appellate jurisdiction as provided by law." Judicial review of an administrative agency's decision is an exercise of a district court's appellate jurisdiction pursuant to La. Const. art. V, Sec. 16 ; Metro Riverboat Assocs., Inc. v. Louisiana Gaming Control Bd., 01-0185 (La. 10/16/01), 797 So.2d 656, 660. For the purpose of this type of judicial review, district courts are courts of limited jurisdiction and only have appellate jurisdiction to review administrative decisions as provided by the legislature or constitution. Id., (citing Loop, Inc. v. Collector of Revenue , 523 So.2d 201, 203 (La. 1987) ). Thus, when reviewing a final administrative decision, the district court functions as an appellate court. Doc's Clinic, APMC v. State, through Dep't of Health & Hospitals, 07-480 (La. App. 1 Cir. 11/2/07), 984 So.2d 711, writ denied, 07-2302 (La. 2/15/08), 974 So.2d 665 ; Bless Home Health Agency v. State, Dep't of Health and Hospitals., 99-936 (La. App. 1st Cir. 5/22/00), 770 So.2d 780. An aggrieved party may obtain a review of any final judgment of the district court by appeal to the appropriate circuit court of appeal. La. R.S. 49:965.
In Metro Riverboat, the court addressed whether Metro had sought to invoke the district court's appellate jurisdiction or its original jurisdiction. See Metro Riverboat, 797 So.2d at 660. Applying that analysis here, we find that appellees sought review of DNR's decision under the district court's appellate jurisdiction. First, *950 appellees titled their petition a "petition for judicial review." Second, in the petition, appellees assert that jurisdiction exists under La. R.S. 49:214.35D and E, which provide for judicial review of a coastal review permit decision in the district court of the parish in which the proposed use is to be situated. Id. Third, appellees' prayer asks the district court to reverse DNR's decision and vacate the permit, which indicates that appellees are seeking direct review of DNR's decision. Finally, the hearing transcript from the district court shows that the district court's review of this matter was primarily based on the record like an appellate court conducts a review. Based on this, we find the district court exercised its appellate jurisdiction under La. Const. art. V, Sec. 16 in reviewing DNR's decision to issue the permit to Bayou Bridge. Now, appellants/defendants seek review of the district court's judgment from this Court.
La. R.S. 49:964(G) states that:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of the evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
On review of the district court's judgment, which is one of record review and not of trial, the court of appeal owes no deference to the factual findings or legal conclusions of the district court, just as the Louisiana Supreme Court owes no deference to factual findings or legal conclusions of the court of appeal. Carpenter v. State, Dep't of Health and Hospitals., 05-1904 (La. App. 1 Cir. 9/20/06), 944 So.2d 604, 608, writ denied, 06-2804 (La. 1/26/07), 948 So.2d 174. Louisiana law provides that a reviewing court should afford considerable weight to an administrative agency's construction and interpretation of its rules and regulations adopted under a statutory scheme that the agency is entrusted to administer, and its construction and interpretation should control unless the court finds it to be arbitrary, capricious, or manifestly contrary to its rules and regulations. Ford v. State, Dep't of Health and Hospitals, 14-1262 (La. App. 4 Cir. 03/06/15), 166 So.3d 332, 337, writ denied, 15-774 (La. 6/1/15), 171 So.3d 264, citing Rachal, ex rel. Regan v. State, ex rel. Dep't of Health and Hospitals, 09-0786 (La. App. 1 Cir. 10/27/09), 29 So.3d 595, 603, writ denied, 09-2588 (La. 3/5/10), 28 So.3d 1013. Thus, the district court, as a court of record review, was constrained to afford considerable weight to DNR's reasonable construction and interpretation of its rules and regulations adopted pursuant to the Administrative Procedures Act.
*951 If the evidence, as reasonably interpreted, supports the determination of an administrative agency, its orders are accorded great weight and will not be reversed or modified in the absence of a clear showing that the administrative action is arbitrary and capricious. Id. Hence, the test for determining whether the action is arbitrary and capricious is whether the action taken is reasonable under the circumstances.[2] Id.
Assignment of Error One
DNR asserts the district court erred in not deferring to DNR's interpretation that guidelines 711(A) and 719(K) do not apply. For the following reasons, we find that the district court erred in substituting its conclusion for DNR's reasonable determination that guideline 711(A) is not applicable to the proposed pipeline.
Guideline 711 concerns "Surface Alteration Activities" and section (A) states that:
Industrial, commercial, urban, residential, and recreational uses are necessary to provide adequate economic growth and development. To this end, such uses will be encouraged in those areas of the coastal zone that are suitable for development. Those uses shall be consistent with the other guidelines and shall, to the maximum extent practicable, take place only:
1. on lands 5 feet or more above sea level or within fast lands; or
2. on lands which have foundation conditions sufficiently stable to support the use, and where flood and storm hazards are minimal or where protection from these hazards can be reasonably well achieved, and where the public safety would not be unreasonably endangered, and:
a. the land is already in high intensity of development use; or
b. there is adequate supporting infrastructure; or
c. the vicinity has a tradition of use for similar habitation or development.
Guideline 711(A) applies to surface alterations, which is defined as "[t]hose uses and activities which change the surface or usability of a land area or water bottom." LAC 43:1.700. Some examples of surface alterations are fill deposition, land reclamation, beach nourishment, dredging (primarily areal), clearing, draining, surface mining, construction and operation of transportation, mineral, energy and industrial facilities, and industrial, commercial, and urban developments. Id. In its reasons for judgment, the district court conceded as to guideline 711(A) "that once constructed, use of the pipeline would not result in a surface alteration." The district court, however, stated that "it cannot be disputed that once constructed, use of the pipeline could conceivably change the usability of the land."
DNR concluded that surface alterations occurring due to the proposed pipeline include "construction activities within the proposed right-of-way of the pipeline, temporary and permanent access road construction, and lands cleared for additional temporary workspaces." DNR decided that guideline 711(A) is not applicable because the surface of the land will be returned to *952 pre-existing contour and the proposed activity is neither industrial nor commercial, specifically the project itself is not the production of goods and services, nor is it engaged in commerce.
Based on a review of the record, we cannot find DNR's conclusion that guideline 711(A) does not apply is unreasonable or arbitrary. No commercial or industrial activity will occur upon the surface of the earth because the pipeline will be completely buried. In addition, the requirement that "the surface of the land will be returned to pre-existing contour" will be satisfied as the anticipated "surface alterations" of the proposed pipeline will be eliminated once the construction activities for the pipeline are completed. The district court conceded this point in its reasons for judgment.
As to the land's usability, the pipeline is located primarily in uplands five (5) feet or more above sea level and in wetlands, where it is routed through an existing utility right-of-way. DNR concluded that the proposed pipeline makes use of existing corridors to the maximum extent practicable. DNR also considered whether the proposed pipeline could increase flood or storm damages and found that it would not increase the risk of flooding or otherwise disrupt water flow during a potential flood event. Given these findings, that the proposed pipeline will be buried a minimum of three (3) feet below the ground, and the deference to which DNR is entitled, we find that the district court erred in substituting its conclusion for DNR's reasonable determination that guideline 711(A) is not applicable to the proposed pipeline.
We also find that the district court erred in substituting its conclusion for DNR's reasonable determination that guideline 719(K) does not apply. Guideline 719 is entitled "Guidelines for Oil, Gas, and Other Mineral Activities" and 719(K) states that "Effective environmental protection and emergency or contingency plans shall be developed and complied with all mineral operations." "Oil, Gas, and Other Mineral Activities" is defined as "those uses and activities which are directly involved in the exploration, production, and refining of oil, gas, and other minerals. Examples include geophysical surveying, establishment of drill sites and access to them, drilling, on site storage of supplies, products and waste materials, production, refining, and spill cleanup." LAC 43:1.700.
As the Secretary of DNR found in his response to the Petition for Reconsideration, the above definition does not include the transportation of oil. A crude oil pipeline is not directly involved in the exploration for oil, the production of oil or the refining of oil. The transportation of oil is, at most, indirectly involved in the refining of oil but is not itself directly involved in the refining of oil. The oil will not be directly refined while it travels through the pipeline. Further, it is generally recognized that the production phase of oil and gas operations is completed upon reduction of the minerals to possession at the well. Babin v. First Energy Corp., 96-1232 (La. App. 1 Cir. 3/27/97), 693 So.2d 813, 815. Thus, a distinction between these different phases is reasonable.
Considering the pipeline is only for transportation of oil and the Louisiana jurisprudence that an "administrative agency's construction and interpretation of its rules and regulations that the agency is entrusted to administer" should control, we find the district court erred in not adopting DNR's interpretation that guideline 719(K) does not apply.
Assignments of Error Two, Three and Four
Appellants also assert that the district court erred in not recognizing that DNR
*953 complied with guidelines 711(A) and 719(K). Because we find no error in DNR's conclusion that 711(A) does not apply, we do not address application of that provision to the proposed pipeline. However, given that the district court remanded this matter to DNR for further development of emergency response plans and appellants' assignment of error regarding the district court's remand of this case, we address DNR's obligation to require effective environmental and emergency response plans from Bayou Bridge. Given the following, the record does not support the conclusion that DNR failed to require effective environmental spill cleanup and emergency response plans for the proposed pipeline from Bayou Bridge.
As part of the application process, DNR required and obtained from Bayou Bridge a Spill Prevention and Response Plan, which provides requirements for spill prevention and response during the construction of the proposed pipeline. With respect to its operation, DNR found that "the Pipeline Hazardous Materials Safety Administration will regulate compliance and safety of interstate pipelines and the State Office of Conservation within the Department of Natural Resources will ensure safety and compliance with the regulations regarding intrastate pipelines." DNR also found that the proposed pipeline was designed to minimize spills, as well as that "in the event of an unauthorized or threatened discharge of oil an effective oil spill response will be coordinated through the Louisiana Oil Spill Coordinator's Office and the U.S. Coast Guard."
The Louisiana Oil Spill Prevention and Response Act delegates the authority to develop the State's oil spill prevention and response plan and to coordinate the operational implementation and maintenance of the oil spill prevention program to the Louisiana Oil Spill Coordinator's Office ("LOSCO"). La. R.S. 30:2451 et seq. Pursuant to La. R.S. 30:2456, the LOSCO coordinator's authority includes to "[d]evelop a statewide oil spill prevention and response plan," "[p]rovide a coordinated response effort from all appropriate state agencies" and "[c]oordinate the operational implementation and maintenance of the oil spill prevention program."
Importantly, the Act makes all emergency response and cleanup by other state agencies, like DNR, subordinate to and only as authorized by LOSCO, as it states that, "[a]ll persons and all other officers, agencies, and subdivisions of the state shall carry out response and cleanup operations related to unauthorized discharges of oil subject to the authority granted to the coordinator under this Chapter." La. R.S. 30:2462.
In directing the LOSCO coordinator to develop a state oil spill contingency plan, the Legislature directed "[t]he Department of Natural Resources, in cooperation with the coordinator, shall recommend provisions of the plan providing for protection and rehabilitation of appropriate resources under its jurisdiction." La. R.S. 30:2459. Based on this provision, the Legislature has given DNR the authority to "recommend provisions" to LOSCO for inclusion in such plans but LOSCO actually promulgates the response plan of actual or threatened oil discharges. Thus, the authority that the Appellees argue DNR has is actually delegated to another agency.
DNR cannot usurp the authority granted to LOSCO or any other state agency. With this limitation in mind, DNR requested and received from Bayou Bridge "an overview addressing how the system is safely operated and monitored and ... included response procedures that would be implemented in the rare event of a release." In accompanying correspondence, Bayou Bridge stated that,
*954 [it] is drafting a separate Facility Response Plan (FRP) which details the procedures to be implemented in the event of an inadvertent release from the system during operations. The FRP will comply with the applicable requirements of the Oil Pollution Act of 1990 (OPA 90) and will be prepared in accordance with the National Oil and Hazardous Substances Pollution Contingency Plan, the Region 6 Contingency Plan, the Southeast Texas and Southwest Louisiana Area Contingency Plan, and the Southeast Louisiana Area Contingency Plan. An operator must submit the FRP to the Pipeline and Hazardous Materials Safety Administration (PHMSA) prior to commencing transportation of crude oil. A draft is in development, but cannot be finalized until construction is essentially complete as the plan must account for the final design and construction of the system .
With regard to emergency evacuation procedures, DNR stated that,
Neither SLCRMA nor DNR's regulations encompass emergency evacuation procedures, and DNR thus lacks both the jurisdiction and the expertise to mandate or evaluate such procedures. No such procedures are required in coastal use permits, so the lack of such a plan in the CUP is not contrary to law and evidence, nor does it require further examination of the issues and evidence.
This statement is supported by La. R.S. 29:727 and 29:729, pursuant to which parish presidents and governments are responsible for evacuations and emergency response efforts, including evacuation of residents of their parishes. In addition, there is no indication in the record that the proposed pipeline will change existing evacuation routes.
Considering the foregoing, we find DNR made a reasonable determination, within the permissible scope of its authority, that the submitted emergency response and contingency plan overview constitutes effective environmental protection and emergency or contingency plans for the proposed pipeline. Thus, we find the district court erred in remanding this matter to DNR for development of further environmental protection and emergency or contingency plans.
Appellees' Cross-Appeal
Appellees assert that DNR did not comply with its public trust obligations under La. Const. art. IX, Sec. 1 by granting the permit for the proposed pipeline and by not considering the potential impacts on the St. James community, the wetlands and drinking water crossings or alternative sites for the proposed pipeline. Given its remand of the case, the district court did not consider this argument. While an appellate court generally will not consider an issue that the district court has not addressed, we address this issue here because of the significant public interest issues at stake, the time sensitivity of this appeal, in the interests of judicial economy and efficiency and to avoid remanding this case to the district court. Further, the district court was not sitting as a trial court, but was itself a court of record review.
The Louisiana Constitution imposes a duty of environmental protection on all state agencies and officials, establishes environmental protection standards, and requires the legislature to enact laws to implement this policy. La. Const. art. IX Secs. 1 and 2 ; Save Ourselves, Inc. v. Louisiana Environmental Control Com., 452 So.2d 1152 (La. 1984). The Constitutional standard requires environmental protection "insofar as possible and consistent with the health, safety, and welfare of the people." Id. at 1157. In this regard, the *955 Louisiana Supreme Court has stated as follows:
This is a rule of reasonableness which requires an agency or official, before granting approval of proposed action affecting the environment, to determine that adverse environmental impacts have been minimized or avoided as much as possible consistently with the public welfare. Thus, the constitution does not establish environmental protection as an exclusive goal, but requires a balancing process in which environmental costs and benefits must be given full and careful consideration along with economic, social and other factors. Id.
Based on Louisiana jurisprudence, the determination of whether DNR discharged its public trust duty in issuing the permit for the proposed pipeline depends on whether DNR considered the following: (1) whether the proposed pipeline fully minimizes adverse environmental effects; (2) whether alternate projects, alternate sites, or mitigating measures would offer more protection for the environment than the pipeline as proposed without unduly curtailing non-environmental benefits; (3) whether the potential and real adverse environmental effects of the proposed pipeline have been avoided to the maximum extent possible; and (4) whether a cost benefit analysis of the environmental impact costs balanced against the social and economic benefits of the proposed pipeline demonstrate that the latter outweighs the former. In re Rubicon, 95-108 (La. App. 1 Cir. 1996), 482 So.2d 475, 482.
In its Basis of Decision regarding issuance of the permit, the Secretary for DNR stated the following:
Considering the entirety of the Administrative Record, I make the following conclusions: (1) That the social and economic benefits outweigh the environmental costs; (2) That there are no feasible alternative projects which would offer more protection to the environment than the proposed use without unduly curtailing the non-environmental benefits; (3) That there are no alternative sites that would offer more protection to the environment than the proposed use site without unduly curtailing the non-environmental benefits; (4) That there are no further mitigating measures that would offer more protection to the environment than the use as proposed without unduly curtailing non-environmental benefits; (5) That the decision to grant this coastal use permit is consistent with the state coastal zone management program, including all applicable permit conditions relating to compensatory mitigation for unavoidable coastal resource impacts due to the use; and (6) That the decision to grant this coastal use permit is consistent with the approved local programs for affected parishes. Therefore, it is the decision of the Administrator to adopt the recommendations of [Office of Coastal Management] OCM staff that have analyzed and carefully reviewed all of the information submitted by the Applicant and the public, and to recommend issuance of this CUP with project specific conditions that bring it fully into conformance with the Guidelines outlined above.
DNR's thirty-four page Basis of Decision shows that its conclusions were made based on "thorough and careful review of the coastal use permit application, all comments, responses, data and documents submitted for consideration to this office, along with in-house data, maps, knowledge, familiarity and experience in the project area." The decision also supports DNR's finding that the applicable guidelines have been satisfied. DNR's lengthy analysis applying the guidelines in *956 this matter involved an intensive and thorough evaluation of not only the factors identified in jurisprudence, but an even more detailed evaluation and analysis of these factors and the numerous issues related thereto. As required by guideline 701(H), we find that DNR conducted a systematic consideration of all pertinent information regarding the use, the site and the impacts of the use and a balancing of their relative significant public benefits with adverse impacts.
In addition, DNR considered alternative routes for the pipeline, as well as a no action alternative, which was rejected based on DNR's finding that the proposed pipeline "will improve overall safety to the public and environment" and "reduce crude oil shipped by truck and rail and increase the amount shipped by pipeline," which is the safest and most efficient method of crude oil transportation, according to Department of Transportation statistics. Further, during the course of the evaluation process, DNR required modifications of the proposed pipeline to avoid or minimize, to the extent practicable, environmental risks.
Viewing the record in its entirety, we do not conclude that DNR fell short in satisfying its public trust duty relative to the issuance of the permit for the proposed pipeline. There is extensive support for DNR's compliance with its public trust duty in the record, including but not limited to its Basis of Decision, the Basic Findings & Guideline Conformance Checklist, the Reconsiderations, and the handling of the public hearing and all comments arising therefrom. Thus, we find no merit to this assertion.
CONCLUSION
For the reasons stated, we reverse the district court's judgment and uphold the validity of the Coastal Use Permit issued to Bayou Bridge for the construction and operation of the proposed pipeline.
REVERSED
JOHNSON, J., DISSENTS WITH REASONS
I, respectfully, dissent from the majority opinion for the following reasons.
First, I am of the opinion that this Court's appellate jurisdiction has not been properly invoked in this matter. The trial court did not render a judgment that disposed of all of Plaintiffs' claims. As indicated in the written reasons for judgment, the trial court declined to rule on Plaintiffs' claim that the DNR violated its duty of public trust. The trial court only considered and disposed of Plaintiffs' claim that the DNR was arbitrary and capricious in its determination by failing to comply with its Coastal Use Guidelines. As such, the trial court rendered a partial judgment.
La. C.C.P. art. 1915(B) provides:
(1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal and may be revised at any time prior to rendition of the judgment adjudicating *957 all the claims and the rights and liabilities of all the parties.
(Emphasis added).
La. C.C.P. art. 1911 states, "No appeal may be taken from a partial final judgment under Article 1915(B) until the judgment has been designated a final judgment under Article 1915(B)."
Here, the judgment of the trial court did not designate the May 15, 2018 partial judgment as a final judgment pursuant to La. C.C.P. art. 1915(B). While the majority opinion addresses the Appellees' claim that the DNR violated its duty of public trust, it ignores the procedural rules stated above and fails to provide any legal authority to support its appellate review of the partial final judgment rendered by the trial court. Ultimately, this Court's appellate jurisdiction has not been invoked through the judgment at bar.
Furthermore, even in addressing the merits of the case, I disagree with the majority opinion on whether DNR violated its duty of public trust. The review of the alternative sites/methods mentioned in the 34-page DNR decision was solely an analysis provided by Bayou Pipeline, which was adopted by DNR as its own conclusions. The analysis concluded that there were no lesser damaging feasible sites, location, alignments and/or alternative construction techniques that were reasonable for the proposed project. DNR's decision does not indicate that Bayou Pipeline's analysis was independently verified by DNR. Based upon Bayou Pipeline's analysis, DNR determined that the social and economic benefits to the public outweighed the environmental impacts by focusing on the revenue that will be generated with the operation of the pipeline. However, the analysis does not consider the overall welfare of the public when placing the pipeline in an area already inundated with chemical facilities.
According to La. Const. Art. IX, § 1, "The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people ." (Emphasis added). After reviewing the reasons for DNR's decision, I find that DNR's adopted decision gave significant consideration to the economic benefits and minimal consideration to the environmental effects on the wildlife and habitats; yet, it gave virtually no consideration to the impact on the human lives in that area. As a result, I find that DNR's decision was arbitrary and gave insufficient weight to the welfare of the people; thus, it was a violation of DNR's duty of public trust to issue Bayou Pipeline the coastal use permit for the pipeline.
For the foregoing reasons, I dissent from the majority opinion by finding that this Court's jurisdiction has not been invoked, and alternatively, finding that DNR violated its duty of public trust. As such, I would vacate the coastal use permit for the proposed pipeline and remand the matter to DNR for consideration of the public welfare.

These assignments are covered under our discussion of DNR's assignments of error.

DNR initially argues that the district court erred in not applying the proper reasonableness standard to its review of DNR's interpretation and application of its regulations. Given that the district court's review was of record, and that the court of appeal owes no deference to the district court's findings or legal conclusions, we do not think it is necessary to address this issue and thus proceed with our analysis of the litigants' assignments of error taking into consideration the deference owed to DNR's interpretation and application of its regulations.