797 So.2d 656 (2001)
METRO RIVERBOAT ASSOCIATES, INC.
v.
The LOUISIANA GAMING CONTROL BOARD.
No. 2001-C-0185.
Supreme Court of Louisiana.
October 16, 2001.
Rehearing Denied November 16, 2001.
*657 L. Rand Dennis, Richard P. Ieyoub, Attorney General, Thomas A. Warner, III, Counsel for Applicant.
Thomas W. Tucker, Lisa C. West, Tucker & West; John J. Cummings, III, Cummings, Cummings & Dudenhefer; Thomas J. Barbera, Christopher C. Pickren, Montgomery, Pickren & Barbera; Jane H. Barney, David P. Steiner, Counsel for Respondent.
KIMBALL, J.[*]
In this case, the Louisiana Gaming Control Board conditionally approved a transfer of an ownership interest in a riverboat gaming licensee from one corporation to a yet-to-be-formed corporation. A fellow holder of an ownership interest in that licensee appealed. For the following reasons, we conclude that neither lower court obtained appellate jurisdiction and that *658 this was not a proper case for the court of appeal's exercise of supervisory jurisdiction. Therefore, we affirm that portion of the court of appeal's judgment vacating the district court's judgment and dismissing the appeal, and we vacate the remainder of the court of appeal's judgment.

FACTS AND PROCEDURAL HISTORY
The Belle of Orleans is licensed to operate a riverboat gaming vessel. The Belle is made up of two partners, Bally's Louisiana, Inc., which owns 49.9%, and Metro Riverboats Associates, which owns 50.1%. Hilton Hotels Corporation is the parent company of Bally's.
In 1998, Hilton desired to spin-off its casino holdings to Park Place Entertainment Corporation and to merge Park Place with Grand Casino, Inc. The Louisiana Gaming Control Board informed Hilton that the transaction needed its approval. Hilton filed a petition with the board requesting such approval and Metro filed a petition contesting it.
The board held a public meeting on December 29, 1998, at which Metro and Hilton were heard and the Louisiana State Police (LSP) reported the results of its investigation into whether the transaction should be approved. At the conclusion of the meeting, the board adopted a resolution in which it approved the spin-off and merger subject to certain conditions.[2] Metro then filed objections to the board relating to the approval and requested a hearing before a hearing officer, but the board refused to docket an adjudicatory hearing.
Subsequently, Metro filed a "Petition Appealing [the] Decision of the Louisiana Gaming Control Board" in the Nineteenth Judicial District Court. Metro asserted jurisdiction pursuant to gaming statutes that allow for judicial review of decisions of the board, namely La. R.S. 27:26[3] and La. R.S. 27:89.[4] During a hearing, the district court judge admitted exhibits into evidence over the board's objection. The board asked the court whether they were following the procedure of an appeal or of a suit in the court's original jurisdiction, but the court did not address that issue. *659 The court vacated the board's resolution, finding that the board was without authority to conditionally approve the transfer, and that the board was required to hold a public hearing after the conclusion of an investigation by the LSP to determine whether the spin-off and merger should be approved pursuant to La. R.S. 27:68(E).
The board appealed to the first circuit, which affirmed the district court's judgment on original hearing. On rehearing, the first circuit concluded that the original panel was correct on the merits, but that it should review the case under its supervisory jurisdiction. The court found that because the board's action was not final, it was not an appealable judgment over which the district court had jurisdiction. Therefore, the first circuit vacated the decision of the district court and dismissed the appeal. It decided, however, to accept the case under its supervisory jurisdiction.
The court then turned to the merits of the case and concluded that conditional prior approval of the transfer was not authorized by the gaming provisions and vacated the December 29, 1998 resolution of the board. The court then agreed with the district court's ruling that the board be required to conduct a public hearing to determine whether the spin-off and merger should be approved, adopting the opinion of the original three-judge panel of the court of appeal.
We granted certiorari to consider whether jurisdiction was properly exercised in this case. Metro Riverboat Assocs. v. Louisiana Gaming Control Bd., 01 C 0185 (La 6/1/01), 793 So.2d 188.

LAW AND DISCUSSION
Initially, the board argues that Metro's appeal to the district court was not authorized by the gaming laws and therefore the court of appeal was correct in vacating the district court's decision, but that it erred in deciding the merits of the case under its supervisory jurisdiction. The board further contends that the court of appeal erred in reaching the merits of this case because, as an improper appeal, there was no record upon which it could conduct a meaningful review. Metro, on the other hand, argues that the appeal was proper and, alternatively, that its suit invoked the district court's original jurisdiction so that its resolution of the case was proper. For the reasons that follow, we conclude that the district court did not have appellate jurisdiction over the case, that it did not exercise original jurisdiction over the case, and that its judgment was therefore void. Because the district court's judgment was void due to a lack of jurisdiction, the court of appeal also lacked jurisdiction to address the merits of the case.
The Louisiana Gaming Control Law, La. R.S. 27:1, et seq., establishes the Louisiana Gaming Control Board, which "shall regulate all gaming activities and operations in the state." La. R.S. 27:15(A). Additionally, the board shall "[h]ave all regulatory authority, control, and jurisdiction, including investigation, licensing, and enforcement, and all power incidental or necessary to such regulatory authority, control, and jurisdiction over all aspects of gaming activities and operations as authorized pursuant to the provisions of the Louisiana Economic Development and Gaming Corporation Act." La. R.S. 27:15(B)(1). The Louisiana Gaming Control Law also provides that appeals from any decision of the board shall be filed in the Nineteenth Judicial District Court and shall be reviewed solely on the record. La. R.S. 27:26. Further, it provides that any person adversely affected by an action, order, or decision of the board may appeal to the Nineteenth Judicial District Court in accordance with the provisions of the Administrative Procedure *660 Act. La. R.S. 27:89.[5]
These review provisions are authorized by La. Const. art. V, § 16(B), which states that "[a] district court shall have appellate jurisdiction as provided by law." As we explained in In re American Waste & Pollution Control, 588 So.2d 367, 371 (La.1991), judicial review of the decision of an administrative agency, such as the board, is an exercise of a court's appellate jurisdiction pursuant to La. Const. art. V, § 16(B). On the other hand, district courts are granted original jurisdiction in all civil matters by La. Const. art. V, § 16(A). This grant of original jurisdiction refers to judicial adjudications in the first instance and "designates the adjudicative tribunal in which the initial adjudication is made;" it does not refer to judicial review of decisions of administrative agencies. Id. at 372 (quoting Moore v. Roemer, 567 So.2d 75 (La.1990)). Therefore, for the purpose of judicial review of administrative action, district courts are courts of limited jurisdiction and only have appellate jurisdiction to review administrative decisions as provided by the legislature or constitution. Loop, Inc. v. Collector of Revenue, 523 So.2d 201, 203 (La.1987). Additionally, the existence of a specific statutory procedure generally implies a legislative intent that the special statutory procedure be the exclusive means of obtaining judicial review in the situations to which it applies. Id. at 203.
In light of the above precepts, we must initially presume that Metro sought review of the decision of the board, an administrative agency, under the district court's appellate jurisdiction. Metro contends, however, that its petition can be construed to invoke the court's original jurisdiction. To determine whether Metro invoked the appellate jurisdiction of the court, or whether it, in fact, filed suit under the court's original jurisdiction, we must examine the petition itself. We look through a pleading's caption, style, and form to determine its substance and to do substantial justice to the parties. La. C.C.P. art. 865; Smith v. Cajun Insulation, Inc., 392 So.2d 398, 402 (La.1980); Griffith v. Roy, 263 La. 712, 269 So.2d 217, 222 (1972). First, Metro's petition asserts the district court's jurisdiction pursuant to La. R.S. 27:26 and La. R.S. 27:89, the statutes authorizing judicial review of the board's decisions. Second, Metro's prayer asks that the court reverse and remand the board's decision. By asking that the board's action be reversed and remanded, rather than enjoined, this request appears to seek direct review of the board's action. Third, although Metro claims the petition could have invoked the original jurisdiction of the district court, and points to the fact that Metro also prayed that the court declare *661 that the board cannot approve a transfer without first finding suitability, the petition does not request that the board be cited,[6] a requirement which "is essential in all civil actions except summary and executory proceedings and divorce actions under Civil Code Article 102." La. C.C.P. art. 1201. Without citation and service thereof, all proceedings are absolutely null. Id. Finally, it is clear from the transcript of the hearing in the district court that the court treated the case as an appeal and did not follow the procedures of an original lawsuit. For all these reasons, we conclude that Metro did not invoke the court's original jurisdiction, but instead filed an appeal.
The transcript of the district court's hearing in this case shows that the court admitted 49 exhibits submitted by Metro into evidence. However, a court may not receive evidence when sitting as an appellate court. Hayden v. New Orleans Baton Rouge S.S. Pilots Fee Comm'n, 97-1239, p. 18 (La.1/21/98), 707 So.2d 3, 12; Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151, 157 (1971); Board of Comm'rs for Atchafalaya Basin Levee Dist. v. St. Landry Parish Sch. Bd., 242 La. 285, 136 So.2d 44, 47 (1961); De Frances v. Gauthier, 220 La. 145, 55 So.2d 896, 898 (1951). Therefore, because the district court was sitting as an appellate court and was not exercising its original jurisdiction, it was improper for it to receive this evidence. Rather, the court's review was limited to the record on appeal. Board of Comm'rs for Atchafalaya Basin Levee Dist., 136 So.2d at 47. Section 26 states that all appeals "shall be reviewed solely on the record." La. R.S. 27:26. Also, Section 89 states that appeals shall be in accordance with the LAPA, which in turn states that judicial review "shall be confined to the record." La. R.S. 27:89; La. R.S. 49:964(F). However, there was no record for the court to review because Metro appealed from an action taken by the board in a public meeting.
Having concluded that Metro attempted to invoke the appellate jurisdiction of the district court, we must next determine whether the district court could lawfully exercise appellate jurisdiction in this case. The Louisiana Gaming Control Law provides that the Nineteenth Judicial District Court shall have appellate jurisdiction over "any decision of the board," La. R.S. 27:26, and also over those cases in which "any person" is "adversely affected by an action, order, or decision of the [board]," La. R.S. 27:89. A cursory reading of these statutes could lead to the conclusion that the district court obtains appellate jurisdiction over any decision made by the board, at any point, in any proceeding. However, this literal interpretation produces absurd results and raises constitutional separation of powers issues. It could result in piecemeal appeals, an overwhelming burden on the courts, and an infringement on the administrative process. It would undoubtedly disrupt the functioning of both the courts and the administrative agency. Furthermore, this interpretation could substantially decrease the actual power of the board, thereby obstructing the operation of part of the executive branch of government. Finally, such a broad interpretation leads to situations such as the one presented here, in which a reviewing court has no record to review.
*662 Nevertheless, when a court can reasonably construe a statute to preserve its constitutionality, it must do so. Moore v. Roemer, 567 So.2d 75 (La.1990); Hondroulis v. Schuhmacher, 553 So.2d 398, 416-17 (La.1989) (on rehearing).
It is a basic rule of statutory interpretation that, if a statute is susceptible of two constructions, one of which will render it constitutional and the other of which will render it unconstitutional, or raise grave and doubtful constitutional questions, the court will adopt the interpretation of the statute which, without doing violence to its language, will maintain its constitutionality.
Hondroulis, 553 So.2d at 416-17. In order to avoid the potential constitutional questions raised by a literal interpretation of sections 26 and 89, and to avoid the absurd results that would result from such a reading, we can read these statutes in conjunction with the Louisiana Administrative Procedure Act (LAPA).
The LAPA sets forth procedures to be followed by state administrative agencies, boards, and other entities, including the Louisiana Gaming Control Board. La. R.S. 49:951(2). The LAPA was not intended to supersede the more specific provisions of other administrative acts, such as the Louisiana Gaming Control Law. Corbello v. Sutton, 446 So.2d 301, 303 (La.1984). Rather, it was intended to create procedures in those instances where none exist. Id. The Louisiana Gaming Control Law itself states that hearings and appeals from decisions of the board should be handled in accordance with the provisions of the LAPA. La. R.S. 27:25(B); La. R.S. 27:89. The LAPA provides that judicial review is available when there is a "final decision or order in an adjudication proceeding." La. R.S. 49:964(A)(1). Interpreting La. R.S. 27:26 and La. R.S. 27:89 in conjunction with the LAPA to limit appeals to final decisions or orders of the board resulting from adjudications eliminates the potential constitutional problems and the absurd results caused by a literal interpretation. We therefore conclude that appeals may only be taken from a final decision or order of the board in an adjudication proceeding.[7]
The board's resolution of December 19, 1998, conditionally approving the transfer, was not a final decision in an adjudication proceeding. Both parties agree that there was no adjudication in this case; rather, the resolution was considered and adopted at a public meeting. Additionally, the board's conditional approval of the transfer was not a final decision because the conditions placed upon the transfer required that Park Place submit an application and be found suitable, and the resolution stated that the approval would remain conditional until the renewal of the Belle's license received final approval. The court of appeal was therefore correct in concluding that the board's action was not final.
In the absence of a final decision of the board in an adjudication proceeding, the district court could not obtain appellate jurisdiction over the case. Because the district court lacked jurisdiction, its judgment was void. La. C.C.P. art. 3. The court of appeal therefore correctly concluded that the district court's judgment must be vacated.
After correctly recognizing that the district court was without jurisdiction *663 to adjudicate Metro's appeal and dismissing the appeal, however, the court of appeal exercised its supervisory jurisdiction to reach the merits of the case. The court of appeal itself acquired no appellate jurisdiction because the district court had none. See, e.g., First Pyramid Life Ins. Co. v. Reed, 247 Ark. 1003, 449 S.W.2d 178, 179 (1970); MedX, Inc. v. Templet, 633 So.2d 311, 314-15 (La.App. 1 Cir.1993); Godchaux Sugars, Inc. v. Ockman, 68 So.2d 206, 208 (La.App.Orleans 1953), aff'd 225 La. 599, 73 So.2d 577 (1954); Crabb v. Bishop Clarkson Mem'l Hosp., 256 Neb. 636, 591 N.W.2d 756, 761 (1999); State ex rel. Kelly v. Baker, 580 S.W.2d 611, 612-14 (Tex.Civ.App.Amarillo 1979); Lincoln v. Harvey, 191 S.W.2d 764, 765-66 (Tex.Civ.App.Dallas 1945); 4 C.J.S. Appeal and Error § 36 (1993). The court of appeal had jurisdiction in this case "merely for the purpose of correcting the error of the lower court in entertaining the suit," but not for the purpose of determining the merits. Arizonans for Official English v. Arizona, 520 U.S. 43, 73, 117 S.Ct. 1055, 1072, 137 L.Ed.2d 170 (1997); Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 549, 106 S.Ct. 1326, 1335, 89 L.Ed.2d 501 (1986); United States v. Corrick, 298 U.S. 435, 440, 56 S.Ct. 829, 832, 80 L.Ed. 1263 (1936). Because the district court's judgment was void for lack of jurisdiction, the court of appeal, having nothing to review, should have dismissed the appeal without reaching the merits of the case.
We recognize that supervisory jurisdiction may be exercised in cases in which there is a procedural defect in the appeal, but this is not such a case. More than a mere defect in the appeal, there was never any appellate jurisdiction in this case and the judgments rendered are void. The exercise of supervisory jurisdiction in such an instance to review an act of an administrative agency would be an unacceptable encroachment upon our executive branch of government. Louis L. Jaffe, Judicial Control of Administrative Action, 28-40, 155-59, 357-59 (1965); 2 Frank E. Cooper, State Administrative Law, 679-80 (1965). The court of appeal's judgment vacating the board's resolution and remanding the case, rendered after vacating the judgment of the district court and dismissing the appeal, is therefore vacated.

DECREE
For the foregoing reasons, we affirm that portion of the court of appeal's judgment vacating the judgment of the district court and dismissing the appeal, and vacate the remaining portion of the court of appeal's judgment.
AFFIRMED IN PART and VACATED IN PART.
LEMMON, J., concurs and will assign reasons.
VICTORY, J., concurs.
NOTES
[*] Retired Justice Harry T. Lemmon, assigned as Justice ad hoc, participated in the decision in this case.
[2] The resolution states that the spin-off and merger are approved subject to the following conditions:

A. That within 30 days of this conditional approval Park [Place] submit to the Division a Part A application and all attachments required by the Division;
B. That Park be found suitable;
C. That Park expressly acknowledge through signature on this resolution by an authorized agent that Park accepts and assumes continuing responsibility for any unsuitable conduct by Hilton Hotels Corporation, its agents or employees occurring prior to this spin off and merger which in any manner affects the continuing suitability of the licensee, Belle of Orleans, L.L.C.[;]
D. That Park, through signature on this resolution by a duly authorized agent, acknowledge and accept all regulatory obligations of Hilton Hotels Corporation (financial or otherwise) with reference to the licensee, Belle of Orleans, L.L.C.[;]
E. That the approval remain conditional until the renewal of Belle of Orleans, L.L.C. receives final Board approval.
[3] La. R.S. 27:26 states:

All appeals from any decision of the board shall be filed within ten days of notice of the decision in the Nineteenth Judicial District Court and shall be reviewed solely on the record.
[4] La. R.S. 27:89 states:

Any person adversely affected by an action, order, or decision of the commission may appeal to the Nineteenth Judicial District Court in accordance with the provisions of the Administrative Procedure Act, except that notice of appeal shall be given to the commission and petition for appeal shall be filed with the district court within ten days of the action, order, or decision of the commission.
[5] The Louisiana Riverboat Economic Development and Gaming Control Act originally vested two separate bodies, the Riverboat Gaming Commission and the Division, with distinct powers. Therefore, included in this Act are two appeal provisions, one dealing with appeals from decisions of the Division, and one dealing with appeals from decisions of the Commission. Effective May 1, 1996, La. R.S. 27:11 created the Louisiana Gaming Control Board, which, under La. R.S. 27:31, became the "sole and exclusive regulatory and supervisory board for gaming operations and activities authorized by the Louisiana Riverboat Economic Development and Gaming Control Act." The Board is the successor to both the Commission and the Division. La. R.S. 27:31(C) states that any reference in the laws to entities whose functions were transferred to the Board "shall be deemed to refer to the board." Effective July 7, 2001, La. R.S. 27:89 was repealed by Act No. 1222 of 2001, presumably to end the confusion created by the end of the commission and the division and the creation of the board. We need not determine whether the repeal of this provision should be retroactively applied to this case because our analysis and the result we reach today would be the same in the absence of La. R.S. 27:89.
[6] We note that Metro is aware of the citation and service requirements. In a petition filed on January 29, 1999, Metro prayed that the board be cited and served. In that petition, however, Metro appeals the decision of the board rendered on January 19, 1999, in which case it is not a subject of this appeal.
[7] For purposes of the APA, "adjudication" means "an agency proceeding that results in a disposition that is required to be made (by constitution or statute) after notice is given and a hearing is held. Unless some statute or the constitution require[s] a hearing and notice, an agency action is not an adjudication for purposes of the act." Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330, 333 (La.1980).