837 So.2d 641 (2002)
EL CHICO RESTAURANTS OF LOUISIANA, INC.
v.
LOUISIANA GAMING CONTROL BOARD.
No. 2001 CA 0205.
Court of Appeal of Louisiana, First Circuit.
December 20, 2002.
Rehearing Denied March 10, 2003.
*642 Paul R. Baier, Baton Rouge, for Plaintiff/Appellee, El Chico Restaurants of Louisiana, Inc.
Thomas A. Warner, III, Baton Rouge, for Defendant/Appellant, Louisiana Gaming Control Board.
Before: CARTER, C.J., PARRO, and CLAIBORNE,[1] JJ.
PER CURIAM.
The appeals of these consolidated cases challenge a district court judgment reversing *643 two orders of the Louisiana Gaming Control Board (the Board).

FACTUAL AND PROCEDURAL HISTORY
These consolidated cases involve the Type-2 video gaming licenses held by El Chico Restaurants of Louisiana, Inc. (El Chico). In January 1998, ownership of El Chico's parent company, El Chico Restaurants, Inc., changed. The Louisiana State Police, Video Gaming Division (the Division), was informed of the change in ownership and instructed El Chico that, in order to maintain its video gaming licenses, certain individuals and entities were required to complete and return certain forms (collectively referred to as the application packets).
Application packets requested from those individuals and entities were returned to the Division incomplete. Instead of supplying some requested information, formal objections were entered. El Chico also submitted renewal application packets for the purpose of preserving any and all rights to request annual renewal of the licenses for the period of 1999-2000. The renewal packets contained the same objections supplied in the application packets.
Based on the incomplete applications, notices of revocation were issued in connection with each of El Chico's licenses. El Chico requested an administrative hearing, which was held before a hearing officer. At the hearing, El Chico raised two issues: 1) whether the Division's application packets were void for failure to comply with statutorily mandated rulemaking procedures; and 2) whether the Division's application packets exceed the scope of statutory authorization regarding suitability inquiries. In written reasons, the hearing officer determined that those issues should be addressed to the Board in a proceeding for a declaratory order and stayed a ruling on the revocation of El Chico's licenses.
In accordance with the hearing officer's ruling, El Chico instituted a new proceeding before the Board by filing a petition for declaratory order. In that proceeding, El Chico sought to have the Board declare the Division's application packets invalid as not having been adopted in compliance with law and for exceeding the scope of the statutory authority regarding suitability inquiries. After considering the matter in an open meeting, the Board issued its declaratory order on February 21, 2000, declaring the issue of whether the application packets are invalid for failure to comply with rulemaking procedures to be moot due to the Board's adoption of LAC 42:III.120.[2] The Board further declared that the application packets did not exceed the scope of the statutory authority of the Board to determine the suitability of an applicant. El Chico appealed the declaratory order to the district court.
El Chico then filed a motion in the original proceeding before the hearing officer, seeking to have the hearing officer maintain the stay on the revocation of its licenses, pending its appeal of the declaratory order. The hearing officer denied the motion and issued an order revoking El Chico's Type-2 video gaming licenses and denying El Chico's renewal applications. In written reasons that accompanied that order, the hearing officer determined that El Chico's arguments regarding the validity of the application packets were disposed of by the Board's declaratory order. The *644 hearing officer based his decisions to revoke El Chico's licenses and deny its renewal applications on El Chico's refusal to complete the application packets supplied by the Division. El Chico appealed the hearing officer's decision to the Board. By order dated July 25, 2000, the Board affirmed the hearing officer's decision. El Chico appealed the Board's revocation order to the district court.
The district court consolidated the two matters[3] and, after a hearing, reversed the Board's declaratory order, as well as the Board's revocation order. The Board appeals.

THIS COURT'S PREVIOUS ORDER
In a previous unpublished opinion, this court questioned the existence of a justiciable controversy in this matter based on the Board's assertions that on January 3, 2000, El Chico merged with another corporation and ceased to exist. The Board had further asserted that El Chico's video gaming licenses were personal and non-transferable, and expired by operation of law. Because the record contained no corroborative proof of such a merger, this court was unable to make a determination regarding the existence of a justiciable controversy. Rather than undertake consideration of the merits of the appeals of these cases, which because of a change in corporate circumstances may have assumed the import of a mere academic discussion, this court stayed the Board's appeals and remanded these cases to the district court. The district court was instructed to remand this matter to the Board for the limited purpose of receiving evidence on the issue of the alleged corporate merger. The transcript of the evidentiary hearing was ordered to be submitted to this court as a supplement to the appellate record. Additionally, the parties were ordered to file briefs addressing the single issue of whether a justiciable controversy exists.
The stay of these appeals has been lifted, and this court has received a supplemental record and the briefs of the parties as ordered.

JUSTICIABLE CONTROVERSY
The first issue to be considered in any case is whether the case is properly before the court and whether there is a basis for jurisdiction. Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, 99-0863, p. 3 (La.App. 1st Cir.12/20/00), 774 So.2d 1193, 1196, affirmed in part, vacated in part, XXXX-XXXX (La.10/16/01), 797 So.2d 656. Louisiana courts are without jurisdiction to issue or review advisory opinions and may review only matters that are justiciable. Duplantis v. Louisiana Board of Ethics, XXXX-XXXX, p. 11 (La.3/23/01), 782 So.2d 582, 589. The Louisiana Supreme Court has defined a "justiciable controversy" as:
an existing actual or substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of a conclusive character.
Duplantis, 782 So.2d at 589, quoting Abbott v. Parker, 259 La. 279, 308, 249 So.2d 908, 918 (1971).
*645 The parties have supplemented the record in this case with several joint stipulations, including a stipulation that on January 3, 2000, El Chico and certain other corporations merged with and into El Chico Restaurants of America, Inc.[4] The ultimate question to be answered is whether, upon merger of the corporations, El Chico's gaming licenses automatically transferred and vested in El Chico Restaurants of America, Inc., or expired by operation of law. If the licenses did expire, then there were no licenses to be revoked by the Board, and no justiciable controversy existed at the time the district court ruled on this matter.
Resolution of this issue involves the interpretation of the Louisiana Gaming Control Law in connection with principles of general corporate law.[5] Generally speaking, upon a merger of corporations, the separate existences of the constituent or merging corporations cease to exist, except that of the surviving business. LSA-R.S. 12:115B; 8 Del.C. § 259(a). The surviving corporation then possesses the rights and privileges of the former corporations that are merged or consolidated. LSA-R.S. 12:115C; 8 Del.C. § 259(a). Moreover, the property and assets of the constituent corporations are deemed to be transferred to the surviving corporation without further act. LSA-R.S. 12:115D; 8 Del.C. § 259(a). Thus, El Chico argues, when it merged with El Chico Restaurants of America, Inc., its video gaming licenses were vested in El Chico Restaurants of America, Inc.
Louisiana's Gaming Control Law provides that video gaming licenses are personal to the licensee to whom they are issued and are not transferable. LSA-R.S. 27:311G. Thus, the Board argues, the licenses were not transferred to El Chico Restaurants of America, Inc. via the corporate merger and expired by operation of law.
It is well established that where two statutory provisions are in conflict, the statute that is more specific must prevail as an exception to the general statute. Smith v. Cajun Insulation, Inc., 392 So.2d 398, 402 (La.1980). Louisiana has enacted a statutory scheme specifically aimed at strictly regulating the gaming industry, in furtherance of the public policy of the state concerning gaming. See LSA-R.S. 27:2A. Thus, the provisions of the Louisiana Gaming Control Law override general corporate law to the extent general corporate law is inconsistent with the provisions of the Louisiana Gaming Control Law, or the purposes behind it. Cf. Crist v. Benton Casing Service, 572 So.2d 99, 102 (La.App. 1st Cir. 1990), writ denied, 573 So.2d 1143 (La.1991).
The plain language of the Louisiana Gaming Control Law indicates that video gaming licenses are personal and non-transferable. See LSA-R.S. 27:311G. Therefore, El Chico's video gaming licenses were not transferable to El Chico Restaurants of America, Inc. via corporate *646 merger, notwithstanding principles of general corporations law. El Chico's assertions that the merger effected no change in control and did not alter any of the suitability facts previously submitted to the Division have no bearing on this determination. El Chico ceased to exist on January 3, 2000, the effective date of the merger. See LSA-R.S. 12:115B; 8 Del.C. § 259(a). El Chico's video gaming licenses, therefore, expired by operation of law.
We note that the Louisiana Gaming Control Law makes allowances for the continued operation of video gaming devices where there has been sale or transfer of an establishment holding gaming licenses. The applicable version of LSA-R.S. 27:306E provided, in pertinent part:[6]
(1) When a licensed establishment which requires an alcoholic beverage license as a condition of the receipt of a video draw poker device license is sold, the video gaming devices shall be allowed to continue to operate if the new owner applies for a state Class "A" license within five days of purchasing the business, and upon issuance of a state Class "A" license, the new owner applies for a video draw poker license within five days.
(2) The video draw poker devices shall be allowed to be continued in operation under the old license until the issuance of a video draw poker license in the name of the owner, until any of the following occur:
(a) A determination by the division that the new applicant is unsuitable.
(b) Denial of the new license application.
(c) The passage of one hundred eighty days from submission of the application to the division.
However, LSA-R.S. 27:306 does not provide for the transfer of a video gaming license. It merely provides a mechanism for the continued operation of video gaming devices when the new owner follows the procedures set forth therein for obtaining its own license. In this case, the applicability of LSA-R.S. 27:306 is not at issue, as the stipulations of the parties indicate that El Chico Restaurants of America, Inc. did not follow the statute's procedures.
The corporate merger took place on January 3, 2000, prior to the district court's review of the Board's rulings. We therefore conclude that no justiciable controversy existed at that time, and the district court's judgment is void for lack of subject matter jurisdiction. See LSA-C.C.P. art. 3; Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Bd., XXXX-XXXX, p. 10 (La.10/16/01), 797 So.2d 656, 663. Accordingly, the district court's judgment must be vacated. See Metro Riverboat Associates, Inc., 797 So.2d at 663.
Because the district court was without appellate jurisdiction, we have no appellate jurisdiction to review the merits of these cases. This court has jurisdiction merely for the purpose of correcting the error of the lower court in entertaining the appeals. Metro Riverboat Associates, Inc., 797 So.2d at 663. Because the district court's judgment was void for lack of jurisdiction, this court has nothing to review, and this appeal is dismissed. See Metro Riverboat Associates, Inc., 797 So.2d at 663.

CONCLUSION
For the reasons set forth herein, the judgment of the district court is vacated for lack of jurisdiction, and these appeals are dismissed. Costs of these appeals, in *647 the total amount of $1,451.21, are assessed equally between the parties.
JUDGMENT VACATED; APPEALS DISMISSED.
NOTES
[1] Hon. Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] LAC 42:III.120, effective February 20, 2000, specifies the forms an applicant is required to complete by reference to the form's name and identification number. See Louisiana Register, Vol. 26, No. 2.
[3] In proceedings before the district court, the parties referred to a third case filed by El Chico in the Nineteenth Judicial District Court under docket number 463,013. The third case is described as a suit for declaratory judgment urging constitutional right-of-privacy objections to the application packets. The district court denied a motion to consolidate that case with the two that form the basis for these appeals. That case and the issues raised therein are not part of the present appeals.
[4] The merging corporations included El Chico Restaurants of Louisiana, Inc. (referred to herein as "El Chico"), El Chico Corporation of Alabama, El Chico Restaurant No. 20, Inc., El Chico Corporation of Florida, El Chico Restaurants of Indiana, Inc., El Chico Restaurants of Kentucky, Inc., El Chico Restaurants of Missouri, Inc., El Chico Corporation of Oklahoma, Inc., and Southwest Cafes of Tennessee, Inc.
[5] In its brief, El Chico relies primarily on Louisiana corporations law. However, the Board has questioned the applicability of Louisiana corporations law as El Chico and the newly formed El Chico Restaurants of America, Inc. are Delaware corporations. We find that, as they relate to corporate merger, Louisiana and Delaware laws are substantially similar. Therefore, under either state's law, our analysis is the same.
[6] The statute was amended by 2001 La. Acts, No. 535, § 1 and No. 889, § 1.