SHAWNTELL JOHNSON
v.
ZACHARY MUNICIPAL FIRE & POLICE CIVIL SERVICE BOARD
No. 2009 CA 1097.
Court of Appeals of Louisiana, First Circuit.
March 2, 2010.
Not Designated for Publication
MARK E. FALCON, Plaintiff/Appellee Shawntell Johnson
JOLIN O. BROWN, MARK D. PLAISANCE, Attorneys for Defendants/Appellants, Zachary Municipal Fire & Police Civil Service Board.
Before: PARRO, KUHN, and McDONALD, JJ.
McDONALD, J.
This is an appeal of a judgment in the 19th Judicial District Court, remanding the case for an additional hearing in the matter. The matter concerns the termination of a permanent, classified employee of the Zachary Police Department, which was appealed to and affirmed by the Police and Fire Civil Service Board, and then appealed to the civil district court.

FACTS
Shawntell Johnson was the Communications Supervisor with the Zachary Police Department. On July 16, 2008, an operation was being conducted by the Zachary Police Department to arrest drug dealers at the conclusion of an investigation conducted in large part by an undercover police officer from a different law enforcement jurisdiction. Around the close of Johnson's shift, at 4:30 p.m., the number of officers reporting to the station made it obvious something out of the ordinary was going on. Since Johnson's duties included insuring that there were sufficient employees working to cover all communications with the police station, and considering the extra numbers of officers working, Johnson inquired what was happening. Based on the response, she decided to stay at the station in case assistance was needed beyond what could be provided by the two officers on duty, one of which was a relatively new employee.
According to Johnson, earlier that afternoon she had spoken with a friend, Gladys Witherspoon, and told her that she would come by Witherspoon's house after work to see her 3-week old baby. After determining that she would be working late, she called Witherspoon to advise that she would not be coming. Unbeknownst to Johnson, Witherspoon was a target of the drug arrests planned for that night's operation, having sold drugs to the undercover officer on several occasions in the preceding weeks.
At around 6:30 that evening, the undercover officer went by Witherspoon's home, having been unable to reach her by telephone earlier. As was the procedure, the officer and his vehicle were wired for video and audio transmission. When the officer asked Witherspoon for drugs to sell, Witherspoon was noticeably nervous and reluctant to transact any drug deals. She advised that the "task force is out," and was nervous because of police in the area. When asked how she knew that, she said that she had a friend at the police department who had told her. She also said that she had not been answering her phone because she didn't want to make any drug deals that night. Nevertheless, she sold the undercover officer one pill, and brought him to contact a friend who would be able to supply him with more drugs. Although the "recording" of the conversation between the undercover officer and Witherspoon is barely audible, when Witherspoon had left to go inside, the officer spoke into the recorder, his own interpretation of what Witherspoon had told him.
Subsequently, Witherspoon and the undercover officer drove to a store parking lot allegedly to get more drugs. Witherspoon exited the vehicle in possession of a quantity of drugs and was taken into custody. At the scene and later at the police station, Witherspoon was questioned by Zachary Police officers. Jay Sullivan and David McDavid. Witherspoon said that she was aware of a task force operation because she had been advised by Shawntell Johnson, who was her long-time friend and the godmother of her baby.
On July 17, 2008, Johnson was placed on administrative leave with pay, pending investigation. Louisiana State Police Internal Affairs Division was contacted to investigate the criminal aspects of the incident and Baton Rouge City Police Internal Affairs Division was asked to investigate from a civil service perspective. Both agencies reported to the Zachary Chief of Police. On November 3, 2008, a letter referencing "Notice of Decision" was addressed to Johnson by the police chief. The letter outlined the facts relating to Johnson's placement on administrative leave, stating that an undercover agent working with the Delta Drug Task Force had told Lieutenant Jay Sullivan and Captain David McDavid that "a black female he had been buying drugs from told him that she had received a phone call from a friend of hers that the drug task force was going to be working in the Port Hudson area and executing arrest warrants. The black female, later identified as Gladys Witherspoon, told the undercover agent that the friend's name was Shawntell Johnson and that she worked for the Zachary Police Department." This statement was also confirmed by another black female under investigation indentified as Sherilyn Young, a good friend of Witherspoon. The letter further stated that: "On October 9, 2008, the Internal Affairs Division of the Baton Rouge City Police Department began their investigation into possible violations of the Zachary Police Department's Rules and Regulations. On October 13, I received the finished report from Lt. Darryl Rice of Baton Rouge Police Department's Internal Affairs Division. After the internal affairs investigation by the Baton Rouge City Police Department, it was found that you violated the following sections of the Zachary Police Department Rules and Regulations:
1) Section IV, paragraph A:
PERSONAL CONDUCT APPEARANCE  Every member of the Zachary Police Department, whether on or off duty in an official or unofficial capacity, must conduct himself/herself and act or behave at all times in such a manner as to set a good example for all others with whom he/she may come in contact. He/She shall in no way bring dishonor or disgrace upon himself/herself or exhibit himself/herself as morally unworthy to continue as a member of the honorable profession of a police/communications officer.
2) Section V, paragraph X:
BUSINESS CONFIDENTIAL  All business of the Zachary Police Department which is confidential will not be disclosed by a member except to another member of the department those legally entitled thereto, or as directed by the Chief of Police or his/her designated representative."
The letter concluded that having found that these policies and procedures were violated, Johnson's employment was terminated effective immediately. Johnson appealed the termination to the Zachary Police and Fire Civil Service Department, which held a hearing on the matter on January 14, 2009. At the conclusion of the hearing, a motion was made to "support the decision of the appointing authority." The Board's decision was appealed to the district court.
After hearing argument of counsel, the district court remanded the matter for a full hearing at the administrative level within twenty-one days. The court stated that it had reviewed the matter, and was of the opinion that due process rights were violated. The court declined to "overrule the Board in total, but grant[ed] the appeal insofar as to allow opportunity to have a fair hearing at the administrative level within twenty-one days hereof, which includes the right of cross-examination, includes the right of subpoena, discovery." The judgment ordering the decision made by the court, stated that the decision of the Zachary Municipal Fire and Police Civil Service Board upholding Shawntell Johnson's termination of employment with the Zachary police department is reversed. The city appealed, and Johnson answered the appeal, asserting that the district court judge erred in failing to order her immediate reinstatement with full back pay, plus legal interest and court costs.

DISCUSSION
Both the appellant and the appellee assert that the trial court judgment is in error. The City asserted that the trial court could not legally require a "due process" hearing, nor could it order that a witness be subpoenaed. Johnson argues that if the district court did not find the evidence submitted sufficient, the only recourse is to order reinstatement. Johnson further argues that while hearsay evidence is admissible in an administrative agency hearing, it is not sufficient to support a decision to terminate an employee. "Competent" evidence is required.
The district court's objection in this case is largely based on the failure of Gladys Witherspoon to be subpoenaed by the City because the court believed due process requires Johnson to be given a right to confront and cross-examine witnesses. The City maintains that they had no need to subpoena Witherspoon because the district court is only required to review the evidence to determine whether the Board's decision was made in good faith for cause, and the City was able to prove its case without Witherspoon's testimony.
Johnson had subpoenaed Witherspoon, but the subpoena had not been served. However, Johnson did not request a continuance or any other relief based on the failure of a witness to appear. A board member asked what legal remedy was available with regard to a witness's failure to appear, and was told that although attempts were made to serve Witherspoon, the subpoena had not been served, so no action could be taken against her.
Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause may, within fifteen days after the action, demand in writing a hearing and investigation by the board to determine the reasonableness of the action. La. R.S. 33:2561 A. The board shall have complete charge of any such hearing and investigation and may conduct it in any manner it deems advisable, without prejudice to any person or party thereto. The procedure followed shall be informal and not necessarily bound by the legalistic rules of evidence. La. R.S. 33:2561 B(3).
Louisiana Revised Statutes 33:2561C(1) further provides, in part:
After such investigation, if the evidence is conclusive, the board may affirm the action of the appointing authority. If it finds that the action was not taken in good faith for cause under the provisions of this Part, the board shall order the immediate reinstatement or reemployment of such person in the office, place, position, or employment from which he was removed, suspended, demoted, or discharged. Which reinstatement shall, if the board so provides, be retroactive and entitle him to his regular pay from the time of removal, suspension, demotion, discharge, or other disciplinary action. ...
The provisions of 33:2561(E) dictates the procedure to be followed for challenging a decision of the board:
Any employee under classified service and any appointing authority may appeal from any decision of the board under the provisions of this Part which is prejudicial to the employee or appointing authority. This appeal shall be taken by serving the board, within thirty days after entry of its decision, a written notice of appeal stating the grounds thereof and demanding that a certified transcript of the record or written findings of fact and all papers on file in the office of the board affecting or relating to such decision be filed with the designated court. The board shall, within ten days after the filing of the notice of appeal, make, certify, and file the complete transcript with the designated court, and that court thereupon shall proceed to hear and determine the appeal in a summary manner. This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provision of this Part or to whether a board member should have or failed to recuse himself in accordance with Subsection D of this Section. No appeal to the court shall be taken except upon these grounds.
According to the applicable law, the only determination required of the district court is whether the decision made by the board was made in good faith for cause. Johnson argues that implicit in the court's judgment is a finding that the evidence presented was not sufficient to support the decision, therefore, the proper order was reinstatement with back pay. The City argues that the district court's legal error in not following the law prescribed for review, mandates a de novo review by this court. It is apparent that the district court did not find the evidence sufficient. However, it is unclear whether the record was reviewed or not. Therefore, we find that it is appropriate for us to conduct a de novo review of the disciplinary hearing transcript, and perform the function incumbent on court's of review.
"In civil service disciplinary cases, an appellate court is presented with a multifaceted review function." Evans v. DeRidder Municipal Fire and Police Civil Service Board, 01-2466 (La. 4/3/02), 815 So.2d 61, 65, (citing Bannister v. Dept. of Streets, 95-0404 (La. 1/16/96), 666 So.2d 641, 647, cert denied, 537 U.S. 1108, 123 S.Ct. 884, 154 L.Ed.2d 779 (2003). "First, as in other civil matters, deference will be given to the factual conclusions of the Commissioner." Id. The Commissioner, or Board, has a duty to decide independently from the facts presented whether the appointing authority had good or lawful cause for taking the disciplinary action, and, if so, whether the punishment imposed is commensurate with the dereliction. Hence, in deciding to affirm the Commission's (or Board's) factual findings, a reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. Id. Second, in evaluating the Board's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Board's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. Id.
Under La. Const. Art. X, § 8(A), employees with permanent status in the classified civil service may be disciplined only for cause expressed in writing. Legal cause for disciplinary action exists whenever an employee's conduct impairs the efficiency of the public service in which that employee is engaged. Cornelius v. Department of Police, 07-1257, 07-1258 (La. App. 4 Cir. 3/19/08), 981 So.2d 720, 724; see also Evans, supra. The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity occurred, and that such activity bore a real and substantial relationship to the efficient operation of the public service. Cornelius, supra.
We have carefully reviewed the record in this matter and the undercover surveillance tapes. In addition to the tapes, the evidence presented by the Zachary Police Department was the testimony of the police chief and Lieutenant Sullivan and Captain McDavid. The police chief testified that he reached the decision to terminate Johnson based on the reports submitted by the Internal Affairs Divisions of the State Police and the Baton Rouge City Police. His decision was also based on the reports made to him by his officers, Sullivan and McDavid. When questioned at the hearing regarding what information McDavid had submitted to the chief as conclusive proof that Shawntell Johnson knew that Gladys Witherspoon was involved in a drug investigation, the reply was:
A. He had received information from Lieutenant Sullivan that Officer Johnson called a friend of hers.
Q. Okay. You got information from McDavid, and McDavid got information from Sullivan; and Sullivan must have got information from somebody?
A. (No response)
Q. Is that right?
A. Yes, sir.
Q. Do you know where Sullivan got his information from?
A. My understanding he was listening on the radio.
At the conclusion of the police chiefs direct testimony, a board member questioned him regarding the reports submitted by the internal affairs investigations and whether they were to be submitted into evidence. The Board's attorney responded: "I wasn't planning on putting them in the record. And I will say very candidly that the two  those two reports were not what you would call `conclusive.'" After further discussion, and an objection by Johnson's counsel to the hearsay nature of the report based on hearsay information that is provided to the officer, the board attorney stated:
...[t]hat's why we weren't going to offer them, because I assume Mr. Falcon would object to them, because we don't have the State Police nor the Baton Rouge Police here to testify. And they were somewhat inconclusive. And of course, the Board is free to question Chief Herty. I thought I had laid the foundation.
I wanted the Board to understand that they handed off an investigation to other agencies because they don't like to do the complete investigation, and that he did get a report. But I wanted the Board to understand, and you can question the chief, that his ultimate decision, being one of credibility, is really more based on his officers at the scene that day, and, more importantly, the undercover officer and the video that day, not these reports.
Lieutenant Jay Sullivan also testified. When asked what he overheard as the officer made contact with Ms. Witherspoon, he replied:
I think it might be helpful to explain that I can't always hear everything that's going on in the car. Generally one of the officers that's there can hear what's going on. But we may be in different positions where we can't hear everything that's happening all the time. It depends on the distance that we are from the agent vehicle in each of our respective vehicles.
Myself and Sergeant Dupuy were in a vehicle together on that day. And when we got into position where we could hear, the agent had already made contact with Ms. Witherspoon.
We have thoroughly reviewed the evidence. There is conclusive evidence that Johnson called Witherspoon. Witherspoon did tell the undercover officer that the task force was out. Beyond that, there are more questions than answers. The testimony of every Zachary Police officer was that Johnson was a valued member of the force, with no suspicion of wrongdoing. The police chief relied on the credibility of his officers in determining that Johnson had violated the rules. However, it is not the credibility of the officers that is at issue[1], but of the arrested drug offender whose testimony we never heard. The comments made by the undercover agent are not conclusive because he was only told that a Zachary Police officer had provided the information that made the drug dealer nervous. That agent did not know that the Zachary officer was a personal friend and that there could have been other reasons for making the call other than alerting the suspect. In fact, the circumstantial evidence supports a belief that the call made to Witherspoon was not to warn her of police activity directed toward her.
After a careful review of the record, we find that the appointing authority did not meet his burden of proving that the complained of activity occurred, and that such activity bore a real and substantial relationship to the efficient operation of the public service. Finding no conclusive evidence on which the Board could have based its determination, we find that the Board's decision was not `taken in good faith for cause' and the Board erred in concluding otherwise.
Based on the foregoing, we affirm that portion of the trial court's judgment reversing the decision of the Zachary Municipal Fire and Police Civil Service Board upholding Shawntell Johnson's termination from employment with the Zachary Police Department. We vacate that portion of the judgment that remanded the matter to the Board with instructions to "conduct a due process hearing within twenty-one days of the signing" of the May 11, 2009 judgment. We further vacate that portion of the judgment that orders the Board to afford plaintiff the right to confront her accuser, Gladys Witherspoon, with the right to have a subpoena issued by the Board compelling Gladys Witherspoon's appearance, and the subpoena served by the East Baton Rouge Sheriffs Office. This court further renders judgment reinstating Shawntell Johnson to her former position with back pay, and awards legal interest on such back pay from the date of judicial demand until paid. Trial costs in the amount of $1,168.38, and appellate costs in the amount of $583.50 are assessed against the Zachary Municipal Fire and Police Civil Service Board.
AFFIRMED IN PART, VACATED IN PART, AND RENDERED.
Kuhn, J., concurring.
This court has a duty to examine subject matter jurisdiction on its own motion, even when the issue is not raised by the litigants. Monterrey Center, LLC v. Education Partners, Inc., 08-0734, p. 5 (La. App. 1st Cir. 12/23/08), 5 So.3d 225, 228-29. A district court is vested with jurisdiction to review administrative action as provided by law. See La. Const, art. V, § 16; Loop, Inc. v. Collector of Revenue, 523 So.2d 201, 203 (La. 1987). Thus, a litigant seeking judicial review of administrative action in a district court must establish that there is a statute which grants subject matter jurisdiction to that court. Meiners v. St. Tammany Fire Protection Dist. #4 Board of Commissioners, 09-0435, p. 5 (La. App. 1st Cir. 1/6/2010), ___ So.3d ___.
Louisiana Revised Statutes 33:2531-2568, containing Fire and Police Civil Service Law for Small Municipalities and for Parishes and Fire Protection Districts, are applicable in the instant case. See also La. Const, art. X, §§ 16-20. In particular, La. R.S. 33:2561(E) is the only statute authorizing or addressing judicial review in matters of this nature, and it provides, in pertinent part, as follows:
Any employee under classified service and any appointing authority may appeal from any decision of the board or from any action taken by the board under the provisions of this Part which is prejudicial to the employee or appointing authority. This appeal shall be taken by serving the board, within thirty days after entry of its decision, a written notice of appeal stating the grounds thereof and demanding that a certified transcript of the record or written findings of fact and all papers on file in the office of the board affecting or relating to such decisions be riled with the designated court. The board shall, within ten days after the filing of the notice of appeal, make, certify, and file the complete transcript with the designated court, and that court thereupon shall proceed to hear and determine the appeal in a summary manner. (Emphasis added.)
While this statute authorizes judicial review in "the designated court," the legislature has failed to designate a particular court to hear such appeals. Meiners v. St. Tammany Fire Protection Dist. #4 Board of Commissioners, 09-0435 at p. 6, ___ So.3d ___. Accordingly, neither the Nineteenth District Court nor this court is "the designated court" within the meaning of this statute, and neither court has authority to review this matter pursuant to La. R.S. 33:2561 (E).
However, even in the absence of statutory authority, if a constitutionally protected interest is abridged, access to the court cannot be denied. See McGehee v. City/Parish of East Baton Rouge, 00-1058, pp. 5-6 (La. App. 1st Cir. 9/12/01), 809 So.2d 258, 261-62. The termination of the employment of a permanent, classified, civil servant is such a constitutionally-protected property interest. See Morgan v. Louisiana State Univ. Health Sciences Center-E.A. Conway Medical Center, 06-0570, p. 4 (La. App. 1st Cir. 4/4/07), 960 So.2d 1002, 1005. Thus, the trial court was authorized to exercise its original jurisdiction to review the matter, and a review of the record establishes the trial court properly did so. La. Const. art. V, § 16(B); see Metro Riverboat Associates, Inc. v. La. Gaming Control Bd., 01-0185, p. 5 (La. 10/16/01), 797 So.2d 656, 660. Based on the evidence, I concur in Johnson's reinstatement to her former position with back pay and legal interest. Likewise, I agree it is proper to vacate the trial court's order that the Board take further action in this matter.
PARRO, J., dissenting.
Based on this court's recent decisions in Miazza v. City of Mandeville, 09-0030 (La. App. 1st Cir. 1/6/10), ___ So.3d ___, 2010WL28724, and Meiners v. St, Tammany Fire Protection Dist. #4 Bd. of Commissioners, 09-0435 (La. App. 1st Cir. 1/6/10), ___ So.3d ___, 2010WL28719, I must respectfully dissent on the grounds that neither this court nor the district court had subject matter jurisdiction over this matter. This case involves an attempt to appeal an administrative decision to the district court under the provisions of LSA-R.S. 33:2561(E).[1] As we concluded in the Miazza and Meiners cases, this statute does not "designate" a court for such reviews or appeals. Therefore, the Nineteenth Judicial District Court did not have subject matter jurisdiction over this appeal and could not reverse the Board's decision or remand the case for an additional hearing. This court acquired no appellate jurisdiction because the district court had none. See Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Bd., 01-0185 (La. 10/16/01), 797 So.2d 656, 663.
Unlike the Miazza and Meiners cases, however, the termination of Ms. Johnson from her employment is a decision affecting a constitutionally protected property interest. As such, it is a civil matter over which the district court would have original jurisdiction. See LSA-Const. art. V, § 16(A); see also Metro, 797 So.2d at 660. However, we cannot simply construe this matter as one falling within the district court's original jurisdiction. As was thoroughly discussed in the Metro case, Ms. Johnson would had to have invoked the original jurisdiction of the district court, rather than its appellate jurisdiction, and this court must examine the petition and proceedings in the district court to determine whether she did so.
Ms. Johnson's initial pleading in the district court is entitled, "Petition of Appeal/Review to the 19th Judicial District Court." Paragraph Five of her petition states that she "appeals to the 19th Judicial District Court as authorized by La. R.S. 33:2561." Her petition designates the record and assigns specifications of error, as would normally be done in an appeal. She did not seek to enjoin the Board's action, but asked that it be reversed and that the district court render judgment in her favor, granting the relief requested in her petition before the Board, namely, rescission of the disciplinary action, and alternatively, reduction of the penalty imposed, expungement of appellant's personnel record, payment of all back wages and emoluments, legal interest, reasonable attorney fees, and all general and equitable relief. The district court conducted the hearing in this case as if it were an appeal. No new evidence was taken, the administrative record from the Board's proceeding was submitted, and the hearing was for oral argument only. The district court's judgment states that the Board's decision is reversed, and the case is remanded for a due process hearing.
Admittedly, this case differs from Metro in several respects, in that the prayer for relief asks for "all general and equitable relief," and the Board was cited and served. With reference to the request for "all general and equitable relief," I note that in the Metro case, the party aggrieved by the administrative decision argued that its petition invoked the original jurisdiction of the district court by praying for a declaratory judgment concerning one of the issues. However, the supreme court did not find that this portion of the prayer for relief sufficiently invoked the district court's original jurisdiction. Regarding citation and service, the statute under which Ms. Johnson brought her appeal to the district court, LSA-R.S. 33:2561(E), requires service of a written notice of appeal on the Board from which the case is being appealed, thereby requiring service even if the matter is brought under the district court's appellate jurisdiction over an administrative body's decision. Therefore, I do not believe the fact that the Board was cited and served in the matter before us converts this case to one under the district court's original jurisdiction.
Under the circumstances of this case, in which the original jurisdiction of the district court had not been invoked and in which there was an absence of appellate jurisdiction, I believe this court has no alternative but to dismiss the appeal. Accordingly, I respectfully dissent.
NOTES
[1] There is a credibility issue surrounding the conflicting testimony of what Johnson was told by Captain McDavid. However, we are not called upon to decide that.
[1] Louisiana Revised Statute 33:2561(E) states:

Any employee under classified service and any appointing authority may appeal from any decision of the board or from any action taken by the board under the provisions of this Part which is prejudicial to the employee or appointing authority. This appeal shall be taken by serving the board, within thirty days after entry of its decision, a written notice of appeal stating the grounds thereof and demanding that a certified transcript of the record or written findings of fact and all papers on file in the office of the board affecting or relating to such decisions be filed with the designated court. The board shall, within ten days after the filing of the notice of appeal, make, certify, and file the complete transcript with the designated court, and that court thereupon shall proceed to hear and determine the appeal in a summary manner. This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part or to whether a board member should have or failed to recuse himself in accordance with Subsection D of this Section. No appeal to the court shall be taken except upon these grounds.